SCOTT vs. THE HOME INSURANCE COMPANY OF NEW YORK.

*October 18 — November 3, 1881*

INSURANCE AGAINST FIRE: RENEWAL. *(1) Question of fact for the jury. (2) Renewal held to be for same length of time as original insurance. (3) Admissions of insurer's agent:* Res gestæ. *(4) Insurer bound by agent's agreement to renew: Agent's failure to transmit premium immaterial.*

1. There was sufficient evidence in this case of a second renewal of the policy in suit to send the question to the jury.
2. The term named in the policy was one year, and the premium $30; it had been renewed for a second year on payment of a like premium; and upon the agreement for a second renewal the same amount of premium was paid, but the testimony does not show that anything was said as to the time the renewed policy was to run. *Held,* that the renewal was for one year.
3. Some time after the insurer's agent had agreed to renew the policy and had received the renewal premium, being asked by the assured for

the certificate of renewal, he insisted that he had previously delivered it to the assured. *Held,* that this was an admission, constituting part of the *res gestæ,* and binding upon the insurer.

4. The agent's agreement to renew and receipt of the premium being conclusive upon the insurer, there was no error in rejecting evidence to show that the latter had never received such premium from the agent.

APPEAL from the Circuit Court for *Winnebago* County.

Action on a policy of insurance against fire, issued by the defendant company to the plaintiff, insuring him against loss or damage by fire to his two-story stone and brick building in Winneconne, in the sum of $2,000. It is admitted that the policy was issued May 13, 1875, for one year, and renewed May 13, 1876, for another year. It is alleged by the plaintiff that on the 13th of May, 1877, it was again renewed for one year. This is denied by the defendant. The building was destroyed by fire October 10, 1877. The case is further stated in the opinion. Verdict and judgment for the plaintiff. The defendant company appealed.

For the appellant there were separate briefs by *Finch & Barber* and *J. P. C. Cottrill,* and oral argument by *Mr. Barber* and *Mr. Cottrill.*

For the respondent there was a brief by *Chas. W. Felker,* and oral argument by *W. B. Felker.*

LYON, J. 1. The question litigated on the trial was, whether the policy was renewed the second time in May, 1877; and the principal question argued on this appeal is, whether there was sufficient evidence of such renewal to authorize the court to submit that question to the jury.

The plaintiff testified in his own behalf that in May, 1877, one Edwards, who was the agent of the defendant company at Winneconne, and who, as such, countersigned the orginal policy, came into his store and told the plaintiff that he had renewed him in the *Home,* and thereupon the plaintiff paid Edwards $30, which was the annual premium stipulated in the policy and the premium paid for the renewal of 1876; and

further, that Edwards then and there promised to give plaintiff the usual certificate of the renewal of the policy the next morning, but that the same was never furnished him, although he asked Edwards for it several times afterwards. This testimony of the plaintiff is strongly corroborated by that of two other witnesses, who say they were present when the plaintiff paid Edwards the renewal premium in May, 1877. Edwards denied having received the premium or that he renewed the policy; and there was other testimony on behalf of the defendant tending to show that the transactions testified to by the plaintiff and his witnesses related to the issuing of a new policy to the plaintiff on the same property, for a like amount and term, in the Underwriters' Agency of New York, of which Edwards was also the agent. Such a policy was in fact issued to the plaintiff, dated May 17, 1877, and under it the agency paid one-half of plaintiff's loss by the burning of the building. The recovery in this action was for the other half of the loss. Whatever our opinion might be of the relative weight of this conflicting testimony were we reviewing the testimony, it seems very clear to us, notwithstanding the defendant's theory of the transaction was very strongly supported by the testimony introduced in its behalf, that there was sufficient testimony tending to show a renewal of the policy as claimed by the plaintiff to make it the duty of the court to submit that question to the jury.

2. There is no testimony showing that in any interview between the plaintiff and Edwards anything was said as to the time the renewed policy was to run. It is argued by the learned counsel for the defendant, that this omission brings the case within the rule of *Strohn v. Hartford Fire Ins. Co.*, 37 Wis., 625, and renders the alleged renewal invalid. We cannot agree with counsel. The transaction was a renewal of the old policy with all of its terms and stipulations, one of which was that the risk should be for one year. It amounted to a change of the date of the policy, by mutual consent, from

May, 1875, to May, 1877, and left it a valid policy for one year from the latter date, without any express, specific stipulation to that effect when the renewal agreement was made. Independently of this view we see no difficulty in holding that the renewal was for one year. The original policy was for one year, and the premium was $30. The renewal of 1876 was for one year also, and the premium was the same. The renewal of 1877, nothing appearing to the contrary and the same premium having been paid, may fairly be presumed to have been for one year. It is very evident that both the plaintiff and Edwards so intended, conceding (as the jury found) that they made a contract of renewal.

3. Two witnesses were permitted to testify for the plaintiff, against objections on behalf of the defendant, to conversations in July and September, 1877, to the effect that plaintiff, on those occasions, asked Edwards for the certificate of renewal of his policy in the defendant company, and that Edwards insisted that he had previously delivered such certificate to the plaintiff. Was it error to admit this testimony? It was said in *Hazleton v. Union Bank*, 32 Wis., 34, that "the admissions or representations of an agent, while engaged in any particular transaction for his principal, made in regard to such transaction, may be received as evidence against the principal in a controversy concerning such transaction. But to be received they must constitute a part of the *res gestæ* in the course of the agent's employment about the matter in question. They must accompany the transaction or the doing of the business, and must be within the scope of the delegated authority." Page 48. Although the delivery of the renewal certificate was not essential to complete the contract and bind the company to pay the loss, yet, by the usual course of business, it was the duty of the agent, Edwards, to deliver, and the right of the plaintiff to have, such certificate as evidence of the renewal of the policy. The "transaction" of renewal, therefore, includes the delivery of the certificate, as well as the

preliminary negotiations therefor, and the payment of the premium. Under the rule above stated, it was certainly competent for the plaintiff to show what was said by Edwards when they negotiated the renewal, and also when the premium was paid; and had considerable time intervened between the negotiation and the payment, the evidence would in like manner be admissible. Why, then, was it not admissible to show the statements of Edwards in that behalf when called upon by the plaintiff to complete the transaction of renewal by a delivery of the certificate? Such delivery was part of the *res gestœ* of the transaction of renewal, equally with the negotiations and payment; and the statements of Edwards, concerning which the witnesses testified, pertained thereto. The transaction of renewal, and every act essential to complete it fully, including the delivery of the certificate, were within the delegated authority of Edwards, and this controversy concerns that transaction. We conclude that the testimony under consideration was admissible within the rule above stated.

4. Edwards, defendant's agent, testified, in substance, that he did not renew the policy in question in 1877; that he did not receive the premium for such renewal, and did not enter such renewal in his policy register, nor report the same to the defendant, as the rules of the company and the course of the business required him to do had the policy been renewed; and he produced his policy register in court, which contained no such entry. He was then asked by defendant's counsel, on his direct examination, whether he ever paid the defendant company the premium on any such renewal. The court sustained the plaintiff's objection to the question. It is claimed that this ruling was erroneous. There was no claim made on the trial that the defendant ever received the renewal premium, and from all the evidence it is almost a verity in the case that it did not. But, however this may be, we think the testimony sought to be elicited by the question propounded to the witness was incompetent. If the plaintiff paid the renewal pre-

Scott vs. The Home Ins. Co. of New York.

mium to Edwards, the defendant was bound by such payment precisely as though the money had been paid to its treasurer at the general office of the company in New York. Hence, so far as the plaintiff's right of action is concerned, it was entirely immaterial whether Edwards had or had not paid over the money to his principal. The only effect the testimony could have had was to corroborate and strengthen the denial by Edwards that he renewed the policy. For that purpose it was clearly incompetent. *Second Ward Bank v. Shakman*, 30 Wis., 333. We think the testimony was properly rejected.

5. In the charge of the learned circuit judge to the jury, he instructed them that, in determining the existence or non-existence of alleged facts in relation to which there was a conflict of testimony, they should consider the surrounding circumstances and the reasonable probabilities of the case. It is argued that this is too general, and that the jury may have understood that they were at liberty to consider circumstances of which no proof had been given. Considering the charge as a whole, it seems to us that no person of ordinary intelligence could have so understood it. The judge plainly meant the circumstances which the evidence had disclosed to the jury, and the reasonable probabilities deducible therefrom; and so we think the jury must have understood him.

The foregoing observations dispose of all the alleged errors assigned which it is deemed necessary to discuss. Finding no error in the rulings of the circuit court, we must affirm the judgment.

*By the Court.*—Judgment affirmed.