## Prentiss D. Cheney, Admr. with Will Annexed of the Estate of Harriet H. Beaty v. William W. Beaty.

1. EVIDENCE—*Acts and Declarations of Agents.*—Where a person holds negotiable notes of another, as agent of the payee, and payments have been made upon them, it is his right to know, and the agent's duty to inform him, what credits have been given on the notes and whether they are still in the agent's possession; and if, upon request, such agent fails to do so. and he submits, for examination, a memorandum of the credits claimed, what the agent said and did in relation to it, tending to show that the memorandum was correct in whole or in part, is competent evidence against the payee or his personal representatives in case of his decease.

2. PRACTICE—*Rejected Instruments to be Preserved in Bills of Exception.*—Where an instrument is offered in evidence and its admission is refused, if the party offering it desires to assign its refusal as error, the instrument as well as the offer, refusal, exception, etc., must be preserved in a bill of exceptions.

Cheney v. Beaty.

**Memorandum.**—Assumpsit. In the Circuit Court of Jersey County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Declaration on promissory notes; plea of the general issue; trial by jury; verdict and judgment for plaintiff; appeal by plaintiff. Heard in this court at the May term, 1894, and affirmed. Opinion filed October 29, 1894.

THOS. F. FERNS, attorney for appellant.

O. B. HAMILTON, attorney for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit against appellee as maker of two promissory notes payable to the deceased, one of June 26, 1883, for $1,300 at three years, and the other of July 21, 1883 for $500, each bearing interest at eight per cent from date; and the trial upon the general issue resulted in a verdict for plaintiff for $451.39, which he moved to have set aside, and failing therein, took this appeal from the judgment rendered.

The deceased died August 30, 1891, at the age of eighty-three years. For eighteen years she had been an invalid, and for the last ten, in very feeble health. She could read print but never learned to write or to read writing. From a time some years before the making of these notes until the spring of 1886 she lived with Hattie Beaty, her only child, who acted for her in all matters of her business and to whom by her will she bequeathed the sum of $2,000, leaving the residue of her estate, if any, to her seven step-children in equal shares. From the time last mentioned until her death she made her home with Mrs. Boynton, one of these step-children, who gave her all the care and attention that the infirmities of her health and age required.

Hattie was away from Jerseyville from the fall of 1886, until the following spring. Before going she gave Mrs. Boynton $55 of her mother's money, and also left with her, for safe keeping, the notes here sued on, which were returned when she came back. She delivered them to appellant upon his appointment as administrator, and he testified that

they constituted all the assets of which he ever had any knowledge. When produced on the trial there was no indorsement of any payment or credit on either of them.

When they were made appellee was, and for years afterward continued to be, a banker at Mansfield. He was a step-son of the deceased, brother of Mrs. Boynton and half-brother of Hattie, and administrator of his and their father's estate. It was expressly agreed on the trial that he might be a general witness on his own behalf, notwithstanding the character in which appellant sued. He did testify that when the last of these notes was given they represented all that was due the deceased from that estate, and that he was not then nor ever since indebted to her in any character for any further amount. He produced and identified thirty-one drafts on Chicago, drawn by himself, ranging in date from October 5, 1883, to August 28, 1891, for sums of $50 and $100 (excepting two, for $25 and $75, respectively), of which thirteen were in favor of Mrs. Boynton, and the others, excepting the one for $25, of Hattie, and each indorsed by the payee. They all amounted to $1,875, of which Mrs. Boynton received $850. He testified that they were all to be credited on the notes in suit. That they were all intended by him and received by the payees for account of the deceased is not questioned, nor is the authority of Hattie to receive and direct the application of any money due or belonging to her. Appellee also produced a memorandum of the thirty-one drafts, showing the date, amount and payee of each, and testified that in the preceding fall he and Hattie went over it together, compared it with a list kept by her, and found it agreed with hers in every particular mentioned, except that it contained a note of one draft which hers did not, and did not contain notes of two which hers did; that the drafts themselves were not exhibited nor present at the time, but she then told him they were all credited on the notes in suit.

This paper was admitted in evidence, with the drafts, in connection with what she then said about them, over appellant's objection; and it is claimed that appellee was thereby allowed to make evidence for himself.

She had held his notes as agent of the payee.   He claimed to have made many payments on account of them.   They were negotiable and some balance was still due on them or one of them.   It was, therefore, his right to know, and her duty to inform him if she could, what credit she had given him thereon and whether she was still in possession of them. If, after repeated requests by him to produce the notes, and her failure to do so, he submitted to her for examination a memorandum of the drafts he claimed as proper credits, what she thereupon did and said in relation to it tending to show it was correct in whole or part, we think was competent evidence against her principal, the deceased, and her personal representative, the appellant.   So far as she admitted it to be correct, it became as much her statement as his, and its production was necessary to give meaning and effect to her verbal admission and identify the drafts in respect to which it was made.   What she thus said and did constituted one transaction—a proper business transaction fairly within the scope of her agency.

Hattie denied that she had ever seen that memorandum before and that she ever told appellee she had indorsed the drafts as credits on the notes; and stated they were applied on other indebtedness due from him to her mother for her share of her husband's estate, which indebtedness she said was between three and four thousand dollars outside of the notes in suit, but of which no further particulars were stated.

Mrs. Boynton testified that Hattie at one time told her she had used up the smaller note, which the latter denied.

It is said there was no proof that Mrs. Boynton was authorized to receive the drafts made to her order.   She, herself, said she did not understand that she was the agent of the deceased.   But she told Hattie that if her mother was going to remain with her she must have the right or privilege of drawing money for her use, and that she did so with Hattie's consent.   This was not denied, nor was her statement that the $850 she received was all expended for necessaries for the deceased.   Her authority, we think, was sufficient.

It appeared that the Christian name of Mrs. Boynton's husband was John E. and her own Maria L., and the point is urged against the allowance as credits of some of the drafts she received, that they were payable to Mrs. John L. Boynton.

This is not a question of description in a pleading, and it being beyond doubt that Mrs. John E. Boynton was the person intended, and that she received and expended the money for the deceased, such an error in the name is quite immaterial.

In rebuttal, plaintiff offered in evidence a bill in chancery filed by him as administrator, against appellee, said to be for an accounting for moneys belonging to the deceased from her husband's estate, and still pending, and also three depositions taken by the complainant in support of it; and the refusal of the court to admit them is another of the errors here assigned. But we can not consider it because the matter so offered is not preserved in the record.

So of the receipt said to have been given by Hattie to appellee on settlement of her claim against him, which both she and her attorney who drew it testified had no relation to these notes or any other claim of her mother.

No complaint is made of the instructions. We see nothing in the case but the questions of fact, whether any and what payments were made on the notes in suit. Enough of the evidence has been referred to to show that upon these there was a direct conflict. No sufficient reason appears for interference with the finding of the jury, and the judgment will be affirmed.