Kiekhoefer v. Hidershide, 113 Wis. 280.

---

KIEKHOEFER, Respondent, vs. HIDERSHIDE, Appellant.

*January 29—February 18, 1902.*

*Physicians and surgeons: Malpractice: Appeal and error: Law of the case: Court and jury: Instructions to jury: Evidence: Hypothetical questions: Trials: Remarks of counsel: New trial.*

1. On a former trial of an action for negligence in treating a fracture of plaintiff's arm, defendant's witnesses testified that the fragments were brought into apposition and so retained until they healed, save a slight displacement of one eighth of an inch in one place and one sixteenth of an inch in another. On the second trial, plaintiff's witness, a physician, who testified on the first trial to "some displacement," testified to a displacement of one half an inch, that the deformity was "marked," and that from a displacement such as was described by defendant's witnesses the deformity could not be "pronounced." *Held*, that the court was not precluded by the former decision from considering whether there was presented a jury issue as to negligence of defendant in treating the fracture, nor as to the effect of such negligence in producing the whole or any part of plaintiff's ultimate injury.

2. In such case, where the testimony was so conflicting that reasonable minds might differ as to the extent of displacement permitted by defendant, and there was abundant evidence that the deformity and distortion of plaintiff's hand were the natural and probable results of the greater displacement, the extent of the displacement was properly a question for the jury.

3. Where, in an action for malpractice in improperly treating a fracture at the wrist, there was testimony tending to show that the use of a splint, accompanied by the binding of the hand to it, was not good practice, the confinement of the hand to the

splint is so intimately connected with the use of the splint, that a requested instruction—that there was no evidence to justify the jury in finding that the splint used by the defendant was improper or unsuitable—without qualification, is misleading, and its refusal is not error.

4. In such case a requested instruction—"that unless the jury finds that all of the injury for which plaintiff seeks to recover in this action resulted wholly from the want of ordinary care and skill on the part of the defendant, . . . and that the negligence or imprudence of plaintiff herself in no degree contributed thereto, your verdict must be for the defendant"—is so worded as to be improper.

5. A portion of the instructions given to the jury will not be held erroneous, where, from an examination of the whole charge, the court is satisfied that the jury could not have been misled by the sentence extracted.

6. Where there are conflicting theories of the situation, and evidence to support each, counsel may select any hypothesis fairly supported by the evidence and call for the conclusion of the witness thereon.

7 Where the hypothesis on which an opinion is requested has support in the evidence already given, it is not error to permit plaintiff to introduce expert testimony, based on such hypothesis, before resting, since the defendant has full opportunity to cross-examine upon any modification of that hypothesis which may be justified by the evidence.

8. A motion for a new trial was based, in part, upon remarks of plaintiff's counsel calculated to arouse the prejudices of the jury, which were promptly rebuked by the court, and no other impropriety in the conduct of counsel appeared. In view of the care and wisdom exercised by the court in the conduct of the trial as evidenced by the record, and that, in the light of its superior advantages for knowledge, the trial court ruled that the defendant was not prejudiced thereby, it is *held* that the motion was properly overruled.

APPEAL from a judgment of the circuit court for Trempealeau county: J. J. FRUIT, Circuit Judge. *Affirmed.*

The facts of this case, except as more particularly stated in the following opinion, are set forth in the report of its former appeal. 104 Wis. 126. Upon a second trial the court ruled that there was no evidence to support defendant's responsibility for the injuries to the plaintiff's shoulder, and

instructed the jury to disregard such injuries.   He further
ruled that there was evidence tending to show improper and
negligent treatment, and that the injuries to the wrist at
place of fracture and to the hand were attributable thereto.
A general verdict of $1,200 being returned, judgment was
entered in favor of the plaintiff for that amount, from which
the defendant appeals.

For the appellant there was a brief by *John C. Gaveney*
and *Brown, Abbott & Somsen,* and oral argument by *Mr.
Gaveney.*

For the respondent there was a brief by *Higbee & Bunge,*
and oral argument by *E. C. Higbee.*

DODGE, J.   The first and most important question, the
answer to which will control decision upon several assign-
ments of error, is whether or not, upon the second trial, there
was new evidence with reference to defendant's treatment
of plaintiff's wrist, so as to take the case out of the rule
that the decision on the former appeal is *res adjudicata* at
all future stages of the case, and whether, in the light of
such new evidence, it might reasonably be concluded by a
jury that there was maltreatment, and that the injuries to
the wrist resulted therefrom.   Upon the former trial it was
testified by defendant and Dr. Rigrish that the fragments
of the broken radius were brought into apposition, and so re-
tained until they healed, save for a very slight displacement
whereby the lower fragment had a dorsal protrusion of about
one eighth of an inch above the upper fragment, and an in-
ward projection of about one sixteenth of an inch toward
the ulna.   This testimony was then undisputed, the only
other evidence on the subject being that of Dr. Gunderson,
that he found "some displacement," and that he also found
something of the malformation of the wrist characteristic
of the Colles fracture, known as the "silver-fork" or "bay-
onet" deformity.   It was proved, practically without dis-

pute, that it was consistent with due skill and care to allow the fracture to heal with no more displacement than this, rather than rebreak the bones to place them in perfect apsition.    Upon the trial now under consideration Dr. Gunderson testified that in his opinion, formed at the time of examination, the backward displacement of the lower fragment was a half an inch, so that the ends of the fragments were practically not in apposition at all, merely the lower or front edge of one fragment touching or overriding the upper or backward edge of the other fragment.    He also testified, after knowing all the symptoms suggestive of *neuritis,* and other causes for the condition which he examined, that he was still, at the time of the last trial, of that opinion.    He qualified this statement by the concession that he could not say this with any positiveness from an examination of the bones, for they were so grown into a mass of callus that it was impossible to distinguish bones from callus, or to tell their exact position.    He also testified, with enough definiteness to distinguish it from his former testimony, that the silver-fork deformity of the wrist was "marked," and that it could be due only to displacement of the bones, and another witness, called by the defendant, testified for the first time on this trial that from such displacement, as that described by the defendant the deformity could not be "pronounced."    It was in evidence on both trials that after six weeks any definite estimate of so trifling displacement as that described by defendant and Rigrish would be impossible.    Without going further into the testimony, we are satisfied that this evidence, produced for the first time on the second trial, of an amount of displacement much greater than that testified to by the defendant, albeit only an opinion, was sufficient to carry to the jury the question, not in dispute upon the former trial, whether defendant's statement of the amount of the displacement which he allowed to heal up was true.

It thus appears that upon the trial now under review there was the new element, consisting in the testimony of Gunderson that in his opinion the displacement of fractured fragments must have been much greater than one eighth inch, and that the silver-fork deformity was greater in degree than could result from so slight displacement. We therefore are not precluded by the former decision from considering whether there was presented a jury issue as to negligence of defendant in treating the fracture, nor as to the effect of such negligence in producing the whole or any part of the ultimate injury to plaintiff's wrist.

The first question in such consideration is whether defendant allowed the bones to reunite without substantially reducing the fracture; that is, with a displacement of nearly or quite their entire thickness. This was considered conclusively negatived on the former appeal by the direct testimony of defendant and Dr. Rigrish, which, while its certainty was questioned, was not disputed by any other testimony nor by any facts or symptoms not easily accounted for by some other probable cause. On the last trial that testimony was antagonized by that of Gunderson, already mentioned. Thereupon the necessary uncertainty of any estimate by Rigrish, and even by defendant, at the time bandages were removed becomes important, as also the evident thoroughness of Dr. Gunderson's examination, the wide extent of his experience, and his evident fairness as a witness,—nay, his obvious anxiety to state everything as favorably to defendant as truth would permit. He was not testifying merely to an opinion upon a hypothetical situation, but to facts which he observed, and to his deductions from those facts in the light of his professional learning and experience. In this situation we do not feel able to say that reasonable minds might not differ as to the extent of displacement permitted by defendant; hence it was properly one for the jury. If the fact was as plaintiff claims and Dr. Gunderson opines,

the evidence fails very far of conclusively acquitting defendant of professional negligence. Witnesses testify that a half-inch displacement would be easily discoverable to a surgeon; that to permit it, without resetting, would be to fail almost absolutely of the duty assumed. It would not be a reduction of the fracture, and would be inconsistent with what surgeons call good functional results. There was, beyond doubt, enough to carry to the jury the question of defendant's negligence, if they decided against him on the quantum of displacement.

The next question in order is whether there is evidence to connect the condition of plaintiff's wrist with such treatment as its cause. The great and radical trouble was so large a growth of callus about the point of fracture that it united the radius and ulna, destroying almost completely pronation and supination; with this was the bent, or silver-fork, position of wrist and hand, impairing practical use of the latter. These induced the very serious operation performed by Dr. Gunderson of cutting open the arm, chiseling away the growth between the radius and ulna, freeing the ligaments which had become fastened into the callus, and then cutting a transverse section or disc out of the bent and distorted radius, so as to shorten it to its normal length and to bring the parts of it into allignment, and then re-setting them. It was decided upon the former appeal that the evidence conclusively proved that such growth of callus would not have been within reasonable expectation as the result of the defendant's treatment. That, however, was said with reference to the conditions then held to be presented by the record, a principal one being the very slight displacement, then undisputed. It is shown, at least there is evidence tending to show, that callus deposit is ordinarily the result of fracture; that, the greater the separation or dislocation of the fragments, the greater the volume of callus necessary to form the union and to round off the corners and angles;

indeed, that so nearly uniformly is the former caused by the latter that no other cause is usually looked for except when the deposit of callus is so excessive as to exceed the apparent cause in the fracture or displacement. The proof is, and on the former trial was, overwhelming that, with only one-eighth inch displacement, callus sufficient to involve the ulna would be in excess of any reasonable expectation from that cause alone. There is no such testimony in case of such displacement as estimated by Dr. Gunderson. In such case, apparently, the development might well be the entirely natural and probable result of nature's efforts in surrounding the deranged fragments with the uniting and smoothing mass.

The jury might well have found the relation of proximate cause and effect between complete displacement of the fragments of the radius and the volume of callus formed in plaintiff's wrist, with the resulting disablement and necessity for operation, with attendant suffering and expense. There is, too, abundant evidence that the deformity and distortion of plaintiff's hand were natural and probable results of the greater displacement of the several fragments.

The conclusion thus reached with reference to the existence of a conflict of evidence as to the propriety of defendant's treatment of the fracture and the responsibility of such treatment for the condition of the wrist itself, as found and treated by Dr. Gunderson, disposes of the first, second, and third assignments of error, predicated on the denial of defendant's respective motions for nonsuit, for direction of a verdict, and for a new trial; also of the fourth, upon a refusal to instruct as matter of law that he was not negligent in failing to reset the fracture when he discovered the want of apposition; also of the fifth and sixth, predicated upon refusals to instruct the jury to find for the defendant unless the binding of the fingers to the splint for too long a time should be found to have occurred, and to have been negligent. It also disposes of the argument under the seventh

assignment of error, that the damages are necessarily ex-
cessive because the wrist injury was allowed to be included.
Of course, whether excessive independently of that reason
is another question, not, however, argued by defendant's
counsel.

2. The appellant predicates his eighth and ninth assign-
ments of error upon refusal of instructions requested by him:
First, that there was no evidence in this case to justify the
jury in finding that the splint used by the defendant in
his treatment of the plaintiff was improper or unsuitable.
While it is undoubtedly true that the preponderance of the
evidence was to the effect that the splint used, namely, one
extending to the ends of the fingers, was proper enough for
the purpose of keeping the fractured bones in place, and
quite immaterial to that subject, there was testimony that
the use of such a splint, accompanied by the binding of the
hand to it, was not good practice. The confinement of the
hand during the five or six weeks necessary for the curing
of the fracture was so intimately connected with the use of
the splint extending to the ends of the fingers that the in-
struction as requested, with no qualification, would have been
misleading to the jury. The court did submit by his in-
struction, not whether the use of the splint alone was im-
proper, but whether the treatment of the fingers by binding
them to this splint was negligent and was the proximate
cause of any injury. In this respect we are satisfied no
error was committed.

The court refused defendant's request to instruct:

"Unless the jury finds that all of the injury for which
plaintiff seeks to recover in this action resulted wholly from
the want of ordinary care and skill on the part of the defend-
ant,    .   .   .   and that the negligence or imprudence of
plaintiff herself in no degree contributed thereto, your ver-
dict must be for the defendant."

This instruction is so worded as to be improper. The
jury were not bound to find for the defendant, although they

failed to find that *all* of the injuries for which plaintiff sought to recover were due to his negligence. She was entitled to recover for such injuries as were due to that cause, although only part of those for which she sued. In this connection, however, it is argued that this request should be taken as suggesting to the court the duty of instructing as to the effect of plaintiff's negligence, and that a portion of the charge given is erroneous, as withdrawing from the attention of the jury the significance of her own conduct. The court instructed the jury:

"It was the duty of the plaintiff to co-operate with the defendant, and to conform to his directions, and if she did not do so, or under the pressure of pain could not do so, she cannot hold the defendant responsible, and if her failure in any degree contributed to the injurious results claimed your verdict must be for the defendant."

This was entirely too favorable to defendant, but certainly informed the jury that plaintiff could not recover for injuries due to her own neglect. The complaint is, however, that in a later portion of the charge, where the court summarized the previous instructions, the jury were told that if, under all the evidence, they found the defendant guilty of negligence, they should find for the plaintiff and assess the damages sustained by her. In immediate contact therewith, however, and as a qualification thereof, he proceeded with an instruction as to proximate cause, in which he pointed out that only for such damages as were proximately caused by defendant's negligence could the plaintiff recover, and that the intervention of any other cause, such, for example, as her own neglect, would excuse him. From an examination of the entire charge, we are satisfied that the jury could not have been misled by the sentence extracted by defendant's counsel and excepted to. It was so connected with other portions of the charge that they could not have failed to understand that he was to be exempted from any

results which were due to neglect or failure to co-operate on the part of the plaintiff.

Another portion of the charge is segregated by an exception, and made the basis of the tenth assignment of error, wherein it is claimed that the jury were misled to the idea that defendant owed the duty of care and skill ordinarily exercised by physicians and surgeons, without limiting the comparison to professional men of the vicinity where plaintiff and defendant resided.   The expression criticised is:

"To apply it in this case, the negligence must have been such that a physician and surgeon in the exercise of ordinary care and skill in the treatment of the plaintiff would have foreseen, or ought reasonably to have anticipated, that the plaintiff would sustain the injuries."

The court had already fully instructed the jury that the duty of the defendant was merely that care and skill "usually exercised by physicians and surgeons of good standing in the vicinity or locality of his practice."   The sentence criticised arises in the course of an instruction upon proximate cause, in which the court, in attempting to give the several elements thereof, used the sentence quoted.   In this we think there was no error.   It in no wise modified or conflicted with the rule already given, and it was of course desirable, in the effort to instruct the jury upon the somewhat abstruse and metaphysical rule of proximate cause, to eliminate, as far as possible, parenthetical qualifications, further unnecessarily obscuring the idea to be conveyed.   The measure of defendant's duty of care and skill was correctly given, and we do not think could have been modified to the minds of the jury by the sentence assailed, in the connection in which it was used.

3. The eleventh, twelfth, and thirteenth assignments of error are predicated upon allowing plaintiff to inquire of her own expert as to the propriety of defendant's treatment, on the assumption that the fragments of bone were displaced

substantially their whole thickness, as described by Dr. Gunderson. It is complained—First, that there was no evidence of this; and, secondly, that the question omitted the involvement of the situation from *neuritis.* We have already held that the evidence of Dr. Gunderson was sufficient to carry to the jury the question whether the state of facts as diagnosed by him existed. That being so, it was entirely competent for experts to base deductions upon such a hypothesis, and to inform the jury of the result in case that hypothesis was decided by the jury to be in accordance with the fact. Where there are conflicting theories of the situation, and evidence to support each, counsel may select any hypothesis fairly supported by the evidence and call for the conclusion of the witness thereon. This is the whole purpose of the hypothetical question, namely, to give the jury the benefit of the expert's opinion upon one or another of several situations which may be found to exist under the evidence. The jury is assumed then to decide which of those situations does exist and to apply the expert's opinions accordingly.

Another consideration must not be lost sight of, namely, that at the time these questions were put to the expert, the testimony of neither the defendant nor Dr. Rigrish had yet been given in evidence. There was nothing then before the jury, either to deny the testimony of Dr. Gunderson that in his opinion the fragments were entirely out of apposition, or to suggest the existence of the *neuritic* complication. It is therefore entirely clear that the hypothesis upon which this expert was requested to give an opinion had support in the evidence, and that no error was committed in permitting its introduction at that time. Defendant had full opportunity to cross-examine upon any modification of that hypothesis which was justified by the evidence.

4. The motion for new trial was predicated, *inter alia,* upon remarks of plaintiff's counsel, alleged to have been improper and prejudicial. We do not deem the first, second, or

third, occurring in the course of examination of witnesses, worthy even of statement, not to say discussion. The last is of a very different character. One of plaintiff's counsel (who, by the way, is not one of those appearing for her in this court), in opening the argument to the jury, used the expression:

"This action is one by a lot of doctors against a poor girl, which one of them has injured and maltreated, and the title so should read."

This was objected to, and the trial court declared the statement out of place, rebuked the attorney, and directed him to argue the evidence, and not make general statements not found therein. We can conceive no apology for counsel in making such a statement as this to a jury. The suggestion that the plaintiff stood in this case in the attitude of defending herself against a suggested conspiracy of doctors to do her some further injury was utterly false, of course to the knowledge of the counsel, and its motive could have been only to mislead the jury and arouse their prejudices improperly. The court below, however, treated the conduct as it should have been treated, and the vigor of his remarks, which of course cannot be illustrated by the printed page, may perhaps be inferred by the fact that nowhere else throughout the argument does counsel seem to have trespassed upon the rules of propriety. But while in no way apologizing either for the remark itself or for the motive with which counsel must have made it, we feel constrained to yield to the conclusion of the court below that it was not prejudicial in its results. The prompt rebuke from the court may well cause such excursions by counsel outside of their proper province to recoil upon their own head. It may have done more to arouse the jury to a strict sense of their obligation to both parties than could much argument by defendant's counsel. The record upon this trial of the case is replete with evidence of the care and wisdom exercised by the

circuit court in its conduct, and he having, in the light of all his superior advantages for knowledge, ruled that the defendant was not prejudiced by this conduct of counsel, we do not feel at liberty to take a different view.

We find no other assignments of error worthy of argument; certainly none which can be sustained.

*By the Court.*—Judgment affirmed.