Hupfer, Administrator, Appellant, vs. National Distilling Company, Respondent.

*October 2—October 20, 1903.*

*Nonsuit: Negligence: Death: Bursting of distillery vat: Evidence: Declarations as part of* res gestæ: *Employee of corporation: Scope of authority: Photographs: Identification of objects: Review on appeal: Notice of injury, by whom given.*

1. In an action based upon alleged negligence of the defendant, if any reasonable probability of negligence may account for the event by inference from the evidence within plaintiff's control, defendant should be put to his proofs to supply the facts as to his own conduct, and plaintiff should not be nonsuited merely because he has not fully established those acts of which he can acquire knowledge only from the defendant or those in his interest.

2. In an action for the death of plaintiff's intestate caused by the bursting of a vat containing distillery slops, it is *held* that plaintiff's evidence tended to establish that the collapse of the vat was due to a weakening of the iron hoops from natural causes which the defendant should have anticipated

and guarded against, and might have supported an inference of defendant's lack of ordinary care; and that it was error, therefore, to grant a nonsuit.

3. Declarations of an employee of the defendant whose duty it was to sell slops from the vat and to control the manner of delivery, to the general effect that he had knowledge of the defective condition of the vat and hoops, made within five or ten minutes after the bursting of the vat and while he was rescuing and caring for plaintiff's intestate, who had been washed from the platform on which the vat stood and carried some distance down a hill by the flood of scalding slops, are *held* to have been a part of the *res gestæ*, and admissible as such, whether they could be regarded in the light of admissions or not; and error in excluding them was presumably prejudicial.

4. It having been shown that a certain officer or employee of the defendant corporation had full authority as to the disposition of the hoops after the bursting of the vat, and that he had directed that they be removed to a certain place, his subsequent identification of the hoops there, at the request and in the presence of one of plaintiff's attorneys and a photographer, was within the scope of his authority, and evidence thereof was admissible against the defendant.

5. The evidence on a second trial to prove that hoops shown in certain photographs were the hoops which came from the bursted vat is *held* so different from that on the former trial (discussed in 114 Wis. 279), that the decision upon the former appeal was not necessarily controlling upon the question of the admissibility of the photographs.

6. The question of the identification of objects photographed, as preliminary to the admissibility of the photographs in evidence, is one primarily for the trial court, and, so far as it is a question of fact, the conclusion of that court should not be overruled on appeal unless contrary to a clear preponderance of the evidence.

7. Under sec. 4222, Stats. 1898 (providing that no action for an injury to the person shall be maintained unless, within a year thereafter, "notice in writing, signed by the party damaged, his agent or attorney, shall be served," etc.), a notice signed by an attorney "for claimant," stating that plaintiff's intestate was instantly killed by the accident described, and that satisfaction is claimed by the plaintiff, administrator of the estate, is *held* sufficient, it not being necessary that the notice be given by the beneficiaries, the widow and children, or that it specifically notify the defendant of a claim for their damages.

APPEAL from a judgment of the superior court of Milwaukee county: JAMES O'NEILL, Judge. *Reversed.*

This action is between the same parties and arises out of the same facts as did that reported in 114 Wis. 279, 90 N. W. 191; this, however, being brought under sec. 4255, Stats. 1898, to recover for the benefit of the widow and children of the deceased, Simon Hupfer. The plaintiff offered evidence of a custom on the part of the defendant to sell distillery slops to the public generally from a large slop vat about sixteen feet in diameter, constructed of pine staves about three and one half inches thick, and surrounded by five iron bands or hoops three sixteenths of an inch in thickness; that customers were permitted, because they would not purchase otherwise, to themselves go upon a platform adjoining the tank in order to stir up the contents while drawing it off into their own receptacles; that Hupfer, a frequent customer through a series of years, was, on September 13, 1899, upon this platform, drawing off slops, when the hoops parted, the tank collapsed, and the contents washed him from the platform and down a hill a considerable distance, until stopped by a fence, whereby he was terribly scalded, and as a result died in a few hours after removal to a hospital. The breaking of the hoops was alleged to have been caused by defendant's negligence in failing to take proper care and precautions and in omitting proper inspection, whereby they had become so weakened as to be unsafe. At the close of the plaintiff's evidence the court made an order and later entered judgment of nonsuit, from which the plaintiff appeals.

*Joseph B. Doe,* for the appellant.

For the respondent there was a brief by *O'Connor, Schmitz & Wild,* and oral argument by *A. J. Schmitz.*

DODGE, J. I. Error is assigned upon the nonsuiting the plaintiff at the close of his testimony. The rule is, of course, familiar that such an order can be proper only when the

plaintiff's evidence, giving it the most favorable inferences reasonably possible in his favor, does not tend to establish his cause of action. *Lewis v. Prien,* 98 Wis. 87, 73 N. W. 654; *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 141, 88 N. W. 57; *Morton v. Smiley, ante,* p. 156, 96 N. W. 534. While the rule of law is the same, the practical restrictions upon the court are even greater in the face of a motion for nonsuit than they are upon the motion to direct a verdict after all the evidence is in, especially in a case of this sort, where the actual knowledge of the perils and precautions taken against them by the defendant are necessarily with it, and cannot well be made to appear in the plaintiff's case. If any reasonable probability of negligence may account for the event by inference from the evidence within plaintiff's control, the defendant should be put to its proof to supply the facts as to its own conduct, and the plaintiff should not be nonsuited merely because he has not fully established those acts of which he can acquire knowledge only from the defendant or those in its interest.

In the present case there was evidence tending to show that the vat in question was approximately five years old; that during all of its existence it had been used out of doors to contain distillery slops, which frequently overflowed and came in contact with the hoops, and which also were likely to percolate through the wood and come in contact with the interior surface of the hoops; that such slops contained acids and salts having the effect to disintegrate and eat away iron with which they came in contact, and that the officers of the defendant had knowledge of such tendency; that painting of the woodwork and the hoops would be a proper precaution against this result, whether from such chemicals or from atmospheric influence, but would have to be repeated frequently to be effective, certainly more than once a year. There was evidence tending to prove that the wooden parts had never been painted, and that the iron hoops had not been for at least

two years prior to the collapse. Evidence also tended to establish that the breakage was due to the eating away of the hoops; that such rusting was mainly on the inside toward the tub, but that it was also discoverable upon the outside of the bands; and there was verbal testimony that in places rust had eaten away portions of the hoops which were examined by the photographer, Breitwish. There is also the fact that the hoops did part while the tub was being used according to ordinary custom, and there was in this case, at the stage when terminated, entire absence of proof as to the ordinary life of vats of this sort or as to how often the hoops needed to be renewed. The evidence thus summarized, if believed by the jury, as it might have been, although thrown in conflict in some respects by other testimony, certainly tended to establish that the collapse of this vat was due to the weakening of the hoops from natural causes such as might well have been anticipated and by more diligence guarded against by the defendant, and might well have supported an inference of fact that the conduct of the defendant in permitting this condition to develop, and in exposing the decedent thereto, was not the care exercised under such circumstances by people of ordinary care and prudence. In our judgment, the order of nonsuit was erroneous. The defendant should have been put to its proof, to rebut, if it could, the inference of negligence resulting from the facts which the jury might have found at the time when the motion was made.

II. *Exclusion of evidence.* (a) The first ruling complained of under this classification was upon an offer to prove a declaration made by the witness Dordel, to the general effect that he had knowledge of the defective condition of the vat and hoops. Dordel was an employee of defendant, whose duty it was to sell slops from the tank to customers and to control the manner of delivery, i. e., in permitting customers to go to the place where deceased was when injured. The circumstances of the declaration were, as related by witness

Mrs. Koepp, substantially as follows: She lived across the street, less than 200 feet from the tank, saw it burst, and plaintiff's decedent disappear. She ran downstairs, out of her house, and across the street, where she met Dordel, also going to the place of the accident, with whom she went to the place where deceased lay struggling in the scalding liquid. Dordel rescued him, and brought him part way up the hill, and undertook to care for him. In the course of these transactions, and within five or ten minutes after the bursting of the tank, Dordel made the declarations sought to be proved as part of the *res gestæ.*

The rule that declarations which are part of the *res gestæ* may be given in evidence is, of course, familiar. It rests upon the theory that an event which is relevant is not complete unless the whole may be given, including the spoken words which constitute part of it. Such evidence is deemed safe because of the improbability that utterances will be untrue or fabricated while the mind of the speaker is engrossed with the act itself. The words must be part of the event, and to this end they must be so nearly concurrent in time as to warrant belief that they are spontaneous utterance of the thoughts instantly engendered by the event. They must not be in the nature of a narrative of the fact after it has fully transpired, the fruit of memory, or possibly of fabrication after opportunity to deliberate. The subject has been many times discussed and the rule applied in Wisconsin. A few of the cases in this court and elsewhere suffice. *Mack v. State,* 48 Wis. 271, 4 N. W. 449; *Hooker v. C., M. & St. P. R. Co.* 76 Wis. 542, 547, 44 N. W. 1085; *Hermes v. C. & N. W. R. Co.* 80 Wis. 590, 592, 50 N. W. 584; *Reed v. Madison,* 85 Wis. 667, 56 N. W. 182; *Christianson v. Pioneer F. Co.* 92 Wis. 649, 653, 66 N. W. 699; *Bliss v. State,* 117 Wis. 596, 94 N. W. 325; *Mullan v. P. & S. M. S. Co.* 78 Pa. St. 25, 33; *Elkins v. McKean,* 79 Pa. St. 493; *Shafer v. Lacock,* 168 Pa. St. 497, 32 Atl. 44; *Louisville & N. R. Co. v. Foley,* 94 Ky.

220, 228, 21 S. W. 866; *International & G. N. R. Co. v. Anderson,* 82 Tex. 516, 519, 17 S. W. 1039; *Keyser v. C. & G. T. R. Co.* 66 Mich. 390, 394, 33 N. W. 867; *State v. Murphy,* 16 R. I. 528, 17 Atl. 998; *Comm. v. Hackett,* 2 Allen, 136, 139; *Senn v. Southern R. Co.* 108 Mo. 142, 18 S. W. 1007; *Jack v. Mut. R. F. L. Asso.* 113 Fed. 49.

We cannot agree with the contention that the declaration offered was after or separated from the transaction or event under consideration; for it was made, according to the evidence, while the victim was being rescued and cared for, and in the full heat and excitement of the catastrophe. The event in hand was not alone the bursting of the vat, but included the admission of decedent to the place of peril, the sweeping down hill of the decedent, his struggles, and his rescue and care at the place of injury. There was not nearly so much termination of the transaction as in *Bliss v. State, supra.* It is also intimated by counsel in argument that the remarks were of the nature of an exclamation of remorse over the tragedy such as would spring naturally and spontaneously from a state of mind momentarily developed by the sight. While we cannot know the exact character of the declaration, it suffices that the words may have been such as to be clearly material and unpremeditated. Being spoken, however, in and as a part of a transaction which itself was relevant and material, the declaration was admissible, and its exclusion error, from which prejudice must be presumed unless the contrary clearly appear. *Hermes v. C. & N. W. R. Co.* 80 Wis. 590, 50 N. W. 584. This conclusion does not rest on the fact that Dordel was defendant's employee or agent, but that he spoke as a participant in the events.

(b) Appellant also assigns error on the exclusion of testimony that one Miller, five days after the catastrophe, on request of one of plaintiff's attorneys, pointed out to him and to a photographer certain hoops as the hoops which had been around the exploded tank; it being claimed by appellant that

Miller's act in so doing was within the scope of his authority as an employee of the defendant corporation. It appeared by the testimony of the secretary of the company that Miller "was chief engineer and superintendent of machinery and apparatus, sort of foreman over the mechanics, engineer, and laborers around the yard,—everybody except the experts. . . . The mechanical part of the plant, the machinery and apparatus, was under the supervision of Mr. Miller. He was at the head, but was not manager, of the business. . . . He was next in rank to the general officers, except the chemist. It was the business of Mr. Miller, and possibly of Mr. Wedring, to see that the hoops and staves and material generally from the bursted tank was cleared away and taken care of. His direction in that regard would be authorized by the company." Immediately after the accident, he gave direction that the hoops should be removed to a certain small yard, described as back of the carpenter shop, and that the staves be otherwise disposed of. Some months later he sold these hoops as old iron. The testimony excluded was that he, on request of plaintiff's attorney, pointed out these hoops and said they were the same which came from the broken tank.

The rule of law is entirely well settled that, when an agent is vested with authority to perform any business for his principal, his words, his verbal acts, in conducting that business and in relation thereto, are the acts of the principal and may be proved as against the latter. *Hazleton v. Union Bank,* 32 Wis. 34, 48; *Scott v. Home Ins. Co.* 53 Wis. 238, 10 N. W. 387; *Morse v. C. R. R. Co.* 6 Gray, 450; *McGenness v. Adriatic Mills,* 116 Mass. 177; *Green v. Ophir C., S. & G. M. Co.* 45 Cal. 522; *Austin v. Chittenden,* 33 Vt. 553; *Weeks v. Barron,* 38 Vt. 420; *Midland L. Co. v. Kreeger,* 52 Mo. App. 418; *Ayres v. Hubbard,* 71 Mich. 594, 40 N. W. 10; *Richards v. Murphy,* 1 Whart. 185; *Baker v. Westmoreland & C. N. G. Co.* 157 Pa. St. 593, 27 Atl. 789; *Halsey v. L. V.*

*R. Co.* 45 N. J. Law, 26, 34; *Murray v. Weber,* 92 Iowa, 757, 60 N. W. 492; *Cheney v. Beaty,* 56 Ill. App. 90; *Toll Bridge Co. v. Betsworth,* 30 Conn. 380, 391; *Xenia Bank v. Stewart,* 114 U. S. 224, 228, 5 Sup. Ct. 845; 2 Jones, Ev. §§ 359, 360. This rule is especially applicable to corporations, which can speak and act only through agents. Justice to the rights of others requires that acts of such intangible entities must be significant, and the basis for conduct by others, as in the case of individuals. When, therefore, a corporation selects an individual to do an act in its behalf, the individual, in doing that act, i. e., within the scope of his authority, is, in legal effect, the corporation doing it. This, too, whether he be one of the highest of general officers or a mere temporary employee. The evidence, quite without dispute, establishes that all contact of the corporation with these retired hoops was intrusted to Miller, as well as control of the place where they were. If the hoops were to be identified by the corporation, or to be exhibited to plaintiff's attorney or concealed from him, Miller was obviously the officer to do such act. No one else had any such authority, and no one else had any knowledge on the subject. Surely, exclusion of plaintiff from inspection of the hoops, or their suspicious destruction, if material against the company as suppression of evidence, would be provable by acts of Miller, and in such acts his words characterizing them would be alike admissible. There can be no distinction between such acts and the contrary one of permitting inspection. When plaintiff's attorney applied to Miller for identification and inspection of the hoops, he applied to the corporation. When Miller admitted the attorney to the premises, and led him to the spot, the corporation was responding to that application, and when Miller declared those the hoops desired the words characterized the act; they were integral to it, and as much emanated from the corporation as did the act of admission to its prem-

ises. We cannot avoid the conclusion that identification of these hoops by Miller was admissible as evidence against the defendant, and exclusion thereof was error.

(c) A further assignment of error is predicated on the rejection of certain photographs taken four or five days after the accident, claimed to exhibit the hoops which came from the broken vat, and which, if admissible, would have shown an advanced stage of decay and deterioration and elucidated the photographer's verbal description of their condition. The court, in making the ruling, declared his view, as an original proposition, that the identification was sufficient, but felt himself constrained, by the decision of this court in the previous case, to hold the contrary. In this respect we think he was mistaken. A comparison of the evidence of identification contained in the printed case in the former action and that now before us shows a very marked difference, not only in the specific facts of which testimony was given, but also in respect to the clearness and definiteness of evidence to facts which were in some degree suggested in the former case. Thus, it was proved, substantially without dispute, that the hoops taken from the tank were placed at the spot where were the hoops photographed, and there was no pretense that they had been moved. There was evidence, disputed it is true, that no other hoops were at that particular place, although others were scattered about in the yard in the general vicinity. It was also undisputed that the hoops in question were covered with the grain or meal which formed the solid part of the slops; that none of the other old hoops which had previously been thrown in the same general vicinity had any such grain or meal upon them. The defendant's engineer, Miller, testified that the hoops in the photograph looked like the hoops from the vat; also that the hoops from the vat were easily distinguishable from the old ones by the fresh slops clinging thereto and by the fresh appearance of the inside surface of the hoops, the rust thereon differing in appearance from that

on hoops which had been longer exposed to the weather on both sides. With this evidence to identify the hoops which came from the vat, the witnesses who took the photographs testified that the hoops so photographed were noticeable by reason of fresh slops adhering thereto; that they were also distinguishable from other old iron by the peculiarity of the inner surface; and that there were no other hoops in the pile with those photographed which agreed substantially in quantity with those which came from the vat. This state of the evidence certainly presents a very strong case of identification, and was, as we have said, in many respects differentiated from that which was reviewed on the appeal in the former case; we think sufficiently so differentiated that the trial court might well have considered his judgment uncontrolled by our former decision.

The question of identification, as preliminary to the admissibility of the photographs, was, however, one for the court and not primarily for the jury, and, so far as it was a question of fact, the conclusion of the trial court upon the evidence must be given great weight upon appeal—substantially the same weight as is given that court's findings upon other issues tried without a jury. All of the advantages of observation of witnesses, understanding of the application of testimony to known facts, and the like, are the same in one case as the other, and only where the appellate court can say that the identification is established by a very clear preponderance of the evidence should it overrule the conclusion of the trial court thereon. Such weight is accorded the decisions of trial courts generally upon the various questions of fact arising as preliminary to a ruling upon competency of witnesses or admissibility of particular evidence. *Emery v. State,* 101 Wis. 627, 78 N. W. 145; *Nelson v. Sun Mut. Ins. Co.* 71 N. Y. 453, 461; *Slocovich v. Orient Mut. Ins. Co.* 108 N. Y. 56, 62, 14 N. E. 802; *Johnson v. Arnwine,* 42 N. J. Law, 451, 458; *Granniss v. Irvin,* 39 Ga. 22; *Gorgas v.*

*Hertz,* 150 Pa. St. 538, 24 Atl. 756; *Maughan v. Burns' Est.* 64 Vt. 316, 23 Atl. 583; *Jones v. Tucker,* 41 N. H. 546; *Bain v. Walsh,* 85 Me. 108, 26 Atl. 1001; *Page v. Page,* 15 Pick. 368, 374; *Walker v. Curtis,* 116 Mass. 98; *Blair v. Pelham,* 118 Mass. 420; 1 Greenl. Ev. (15th ed.) § 425. In some jurisdictions it is intimated, indeed, that such decisions by trial courts will not be reviewed on appeal, but we are not prepared to carry the rule of conclusiveness further than we have suggested.

In view of the deference due to a deliberate conclusion by the trial court as to sufficiency of the identification, we might hesitate, even in the present case, to overrule such conclusion and hold it reversible error. Resolution of the doubt on that question is, however, not necessary, as reversal must result upon other grounds, and upon a new trial the positive identification by defendant's engineer may substantially vary the situation.

III. Respondent urges, as justification for the nonsuit, insufficiency of the notice of injury required by sec. 4222, Stats. 1898. That notice was signed, "Lindley Collins, Attorney for Claimant," described the accident, and declared that Hupfer was instantly killed, and that satisfaction is claimed by *George Hupfer,* administrator of the estate. It is contended that the notice must have been given by the beneficiaries, the widow and children, and must notify the defendant of a claim for their damages. The sufficiency of this notice is fully established by *Parish v. Eden,* 62 Wis. 272, 22 N. W. 399; *McKeigue v. Janesville,* 68 Wis. 50, 31 N. W. 298; *Carpenter v. Rolling,* 107 Wis. 559, 83 N. W. 953.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.