LISTMAN MILL COMPANY, Appellant, vs. MILLER, Respondent.

*March 23—April 9, 1907.*

*Sales: Implied warranty: Goods delivered: Conformity to contract: Court and jury: Evidence: Opinions: Improper remarks of counsel.*

1. Upon an agreement to sell and deliver a quantity of "No. 2 screenings," to be the future output of the vendor's flour mill for about two months,—such screenings being a by-product resulting incidentally from the manufacture of flour,—there was no implied warranty that the screenings so sold would be of the same quality as those being produced at the time the contract was made.

2. Upon the evidence in this case the question whether the commodity delivered by the vendor was actually the "No. 2 screenings" from the mill during the period specified, is *held* to have been one for the jury.

3. As to such question it was proper to admit evidence descriptive of the process established and in operation in the mill, and samples or description of the commodity delivered, to show that such commodity could not have resulted from the process described.

4. A statement by the vendee, in his testimony describing the goods delivered, that they were not No. 2 screenings, is *held* not so clearly an attempt to give his nonexpert opinion upon the question which the jury were to answer that its admission, not specifically objected to upon that ground, can be said to have been an error warranting reversal.

5. In an action upon a contract for the sale of screenings thereafter to be produced in plaintiff's flour mill, where the court had excluded samples offered in evidence as having been shown to defendant when the contract was made,—remarks of defendant's counsel in his argument to the jury, commenting on plaintiff's efforts to exclude such samples from the observation and consideration of the jury, are *held* improper; but the trial court having promptly suppressed such comments, commanded counsel to confine himself to the evidence which had been admitted, and ruled that the jury had no right to infer what such samples might be, and having thereafter decided that plaintiff was not so prejudiced that a new trial should be granted, this court does not deem such conduct of counsel a ground for reversal.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge.   *Affirmed.*

The plaintiff, a corporation engaged in operating a flouring mill at La Crosse, Wisconsin, and the defendant, a sheep feeder at Winona, Minnesota, entered into a written contract whereby the plaintiff agreed to sell and the defendant to buy "280 tons bulk No. 2 screenings (more or less) at $10 ton f. o. b. La Crosse.   To be our output from February 5th until April 1, 1906 (excepting about 63 tons still due John E. Erickson)."   The plaintiff from time to time shipped what it claimed to be No. 2 screenings, resulting from the operation of its mill, to the defendant at Winona, who refused to receive the same, whereupon plaintiff sold in open market, the net proceeds being less than the contract price by $947.42. Suit being brought upon the breach of the contract to recover this damage, defendant, as defense, denied everything except an agreement to purchase plaintiff's output of No. 2 screenings, and also set up, by way of equitable counterclaim, that the contract was intended to provide for a sale of screenings to accord with a sample, and prayed reformation accordingly. The equitable issue was tried first to the court and findings made against the defendant and reformation denied.   Thereupon the case was tried to a jury.

Plaintiff's manager testified to the shipments in accordance with the allegations of the complaint of the whole product in its mill classed as No. 2 screenings.   Defendant gave evidence that before the making of the contract plaintiff took him into the mill and showed him the various kinds of screenings which resulted from its operation and explained the process.   As result of comparison with that which he saw in the mill, and the process by which it was produced, defendant testified that the stuff shipped him was not such No. 2 screenings.   The word "screenings" applies generally to the refuse excluded from the wheat which is to be ground and is a by-product. No. 1 screenings were said to be composed mainly of broken

wheat and to be sold at a higher price than No. 2, chiefly for chicken feed. No. 2 was a general refuse remaining after the elimination of No. 1 and after the elimination of oats, flax seed, and mustard seed, and, as defendant claimed, after elimination of the dust.

After overruling a motion to direct a verdict in the plaintiff's favor the court submitted to the jury a single question, answered in the negative, as follows: "Did the plaintiff deliver to the defendant the bulk No. 2 screenings which were the output of its mill from February 5, 1906, to April 1, 1906, excepting about sixty-three tons due one John E. Erickson, previously contracted by the plaintiff to said Erickson?" After overruling motion for judgment notwithstanding the verdict, and for a new trial, judgment was entered in favor of the defendant, from which plaintiff appeals.

*George H. Gordon,* for the appellant.

For the respondent there was a brief by *Webber & Lees,* and oral argument by *E. E. Lees.*

DODGE, J. 1. This was obviously a contract for the purchase of a by-product resulting incidentally from plaintiff's principal business of manufacturing flour. A purchaser could have no rational expectation that the operation of a mill for the production of such valuable product would be varied or restrained by any consideration for the quality of the refuse thrown off in such process. Hence there was no implied warranty on the seller's part that the screenings which would result in the future should be of the same quality as those resulting at the time the contract was made. All that plaintiff agreed to sell and deliver was that which in fact resulted from an established and existing process. The only direct evidence as to whether the commodity delivered did so result must of necessity come from plaintiff's employees, who alone saw it produced, and their evidence is all to the effect that the property delivered did actually so result. But direct evidence may

be overborne by circumstantial. If one of these cars contained clear sawdust, that fact would convince any one that its contents were not screenings from a flouring mill, and doubtless some less degree of inconsistency with that which ordinarily and necessarily results from screening wheat might suffice to satisfy a jury that a commodity could not have resulted from such a process. There was verbal testimony descriptive of that which was contained in the cars sent defendant tending to show that it did not present those seeds and grains usually and uniformly characterizing wheat screenings; that it was mere chaff and dirt. In addition, however, there was exhibited in evidence samples of the contents of each car. Those samples are not before this court. They might have been such as to convince one examining them that they could not result from a process such as was followed in plaintiff's mill, of which some description was in evidence. We therefore cannot say that error was committed in leaving that question to the jury, or in refusing to reverse their negative finding upon it, which is the first assignment of error.

2. The second class of assignments of error are upon admission of evidence offered by defendant, consisting first in description of the process established and in operation in plaintiff's mill, based partly on the observation of the witness, but mainly upon statements made by plaintiff's manager in the course and scope of his management of the plaintiff's business so as to qualify them as admissions (*Hupfer v. Nat. D. Co.* 119 Wis. 417, 96 N. W. 809; *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 99 N. W. 366); secondly, in the samples of the contents of the several cars shipped to defendant; and, thirdly, in the testimony of defendant himself that the contents of such cars were not Listman's No. 2 bulk screenings. We can discover no reason for excluding either the first or second phases of this evidence. It was competent to show what the mill process was, in order to judge what character of product would result. Having done so, it was competent to

show that the commodity tendered could not, and therefore did not, result from the process described. To that end description of such commodity was obviously relevant, either verbal description or exhibition of the samples, the fairly typical character of which was established.

Certain possible aspects of defendant's testimony admitted over objection present questions of more doubt. Thus at one time he was allowed to testify that he examined carefully what plaintiff showed him as No. 2 screenings at the time of negotiating contract, and in immediate connection therewith to testify that none of the cars contained No. 2 screenings. This, we confess, looks like an insidious attempt by counsel to get to the jury comparison between a sample exhibited prior to the contract and the article delivered, which the court again and again ruled improper. But, even were that so, we cannot discover prejudice, for no such question was submitted to the jury. Again, we have been troubled whether the testimony of defendant that the contents of the cars were not No. 2 screenings was not merely the giving of his conclusion or opinion as to the very question the jury were to answer upon all the facts, and that, too, without any showing of expert qualifications in the way of special or peculiar knowledge. No such objection was specified or is now urged by appellant's counsel, and we have reached the conclusion that this objectionable quality does not appear with sufficient certainty to warrant reversal. It was proper for defendant to describe the commodity sent him, and the context in which this particular statement was made gives color to the probability that the witness's statements that these were not No. 2 screenings were understood merely as a part of his description of their characteristics, and not as an attempt to state his opinion as to their source, of which he freely admitted he had no direct knowledge. We are persuaded that prejudicial error is not made to appear in the admission of evidence.

3. Certain remarks of counsel for defendant in argument

to the jury were made a basis for the motion for new trial and are now pressed as ground of reversal. Most of them consist in rather extreme language expressing the contention of counsel that the samples of the commodity shipped to the defendant ought to convince any one that they were mere sweepings, and that if, as was made to appear, the plaintiff's process involved the removal of dirt from the screenings, it was the dirt and not the screenings that had been shipped to the defendant. We are unable to say that this is trespassing beyond the limits of legitimate contention as to the inference or conclusion which might be drawn from the evidence. The most reprehensible of the remarks criticised is the comment to the jury upon the efforts of the plaintiff to exclude from their observation and consideration a sample of screenings which had been shown the defendant at the time of or before the contract was made. An attempt by innuendo or otherwise to suggest to the jury that evidence which the court properly excludes upon the objection of the opposing party would have been injurious to the latter, and thus to seek to arouse suspicion of weakness in the party's case not resting upon evidence, is most improper; but it appears by the record that the trial court promptly suppressed such attempts and commanded counsel to confine himself to the evidence which had been admitted, and ruled that the jury had no right to infer what such samples might be. With this record and with the aid of the trial court's conclusion that prejudice had not occurred to the appellant warranting a new trial, we cannot feel justified in deeming even this conduct of counsel ground of reversal. See *Kiekhoefer v. Hidershide,* 113 Wis. 280, 291, 89 N. W. 189.

*By the Court.*—Judgment affirmed.

CASSODAY, C. J., took no part.