JOHN B. TAYLOR, administrator, *vs.* INHABITANTS OF WOBURN.
SUSAN E. TAYLOR *vs.* SAME.
LILY L. TAYLOR *vs.* SAME.

Middlesex. Jan. 18. — March 2, 1881. COLT & FIELD, JJ., absent.

If the notice, required by the St. of 1877, c. 234, § 3, to be given of an injury occasioned by a defect in a highway, is given to one of the selectmen of a town, it is immaterial that the selectman did not communicate such notice to the board of selectmen.

Under the provision of the St. of 1877, c. 234, § 3, that the notice to a city or town that a person has been injured by a defect in a highway, "may be given by the person injured or by any other person in his behalf," a father may give such notice for his minor daughter.

A father, who has the right of administration of the estate of his son, whose death is caused by a defect in a highway in a town, may give to the town the notice required by the St. of 1877, c. 234, § 3, before his appointment as administrator.

A notice to a selectman of a town that a person was injured on "Christmas morning" on a certain street by a post, the person being told by the selectman that the latter had been to the spot and seen the post, and that it was not a defect, but was rightfully there, is a sufficient notice as to time, place and cause, within the St. of 1877, c. 234, § 3.

The statement of the defect in a highway which occasions an injury to a person is a sufficient designation of the "cause" of the injury, required by the St. of 1877, c. 234, § 3.

It is not necessary in a notice, under the St. of 1877, c. 234, § 3, that a person has been injured by a defect in a highway in a town, to state that the injured person intends to hold the town responsible therefor.

A person, whose son was killed and two minor daughters injured by a collision with a post in a highway in a town, testified, in actions against the town, by himself as administrator of his son and by his daughters, that he went to one of the selectmen in behalf of his daughters and himself, and notified him of the accident; and that he told him "it was hard to have a son killed and daughters almost killed by such a post." *Held,* that the question was properly submitted to the jury how far such interview was in behalf of the persons injured.

In an action against a town for personal injuries caused by a defect in S. Street, it appeared that S. Street, which had been long open to and used by the public, was laid out by the road commissioners of the town as a town way; that the report of the laying out was filed by them in the town clerk's office; that this report was accepted by the town at a town meeting, and the way was built by the town; and that the notice of this meeting was not in accordance with a by-law of the town. The judge ruled "that S. Street had not been laid out in accordance with law, and that, to prove it to be a dedicated way, the jury must be satisfied that it had been used by the public for twenty years before 1846; but that, if the public was not cautioned against travelling upon it, the town would be liable for an accident to persons coming out of such way, as well as those entering thereon." *Held,* that the defendant had no ground of exception.

In an action against a town for personal injuries caused by a defect in a street, it appeared that work had been done to facilitate travel on the street, within six years prior to the accident, by a servant of the town who was paid by the town for doing it; and that he performed the work with the town's horses and implements. *Held,* that the question whether the town had made repairs on the street within six years was properly submitted to the jury.

In an action against a town for personal injuries caused by a post in a highway, if the evidence is conflicting as to the situation of the post in relation to travel, the question whether the post is or is not a defect is one of fact for the jury.

In an action against a town for personal injuries caused by a vehicle coming into collision with a post in a highway, if no instruction is asked or exception taken upon the question whether the driver of the vehicle was in the exercise of due care, the point is not open in this court.

At the close of the plaintiff's case, the defendant is not entitled to ask for the ruling, that there is not sufficient evidence to support the action, unless he elects to rest his case there.

Lord, J. These three actions, which were tried together, were brought to recover damages sustained at the same time by the three children of John B. Taylor, by reason of a defect in a highway in the defendant town. One of the children, a son, died soon after the accident, and the plaintiff in the first case sues as his administrator. The causes of action accrued after

the St. of 1877, c. 234, and before the St. of 1879 required the notice prescribed by the St. of 1877 to be in writing. In each case the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The first question made by the defendant is whether a proper notice was given. The statute requires that the notice should be given by the person injured or by some one in his behalf, and in the case of a town it was provided that the notice thus required should be sufficient if given to one of the selectmen. It does not require either that the party notifying shall give notice to the board, or that the selectman who receives notice shall inform the board. The rights of the injured party cannot be affected by any action or failure to act of such selectman in reference to notice; and so the evidence offered that the selectman did not notify the board was rightly rejected as immaterial.

The next question is whether the notice was given by the proper person. The only notice given was by the plaintiff in the first case, the father of the plaintiffs in the other two cases, they being minors. The St. of 1879, c. 244, requires the notice to be "in writing signed by the person injured, or by some person thereto by him duly authorized." The language of the St. of 1877, c. 234, in reference to such notice, is, "and may also be given by the person injured or by any other person in his behalf." This change of phraseology may be significant. There are many acts which one may do for another, a subsequent ratification of which by the principal is equivalent to previous due authority; but whether the phraseology of the last statute limits the authority given by the previous statute we do not deem it necessary to determine.

So far as the minor daughters are concerned, there would hardly seem to be any other appropriate mode of notice; they are not in law supposed to be capable to do anything in derogation of their rights, and any laches upon their part to fail to give a notice within the thirty days could hardly be held to defeat their right, unless the provision of law that the notice may be given by some one in their behalf should be held to be sufficient authority for another to give the notice; the father is their natural guardian, and, if it be not a duty imposed upon him to

take any steps to secure their rights, it is certainly reasonable to allow him to assume to do for them anything which the statute says may be done by any person in their behalf to secure them in their rights as to other persons.

As to the son, assuming him to have been of age, he was dead, and thus incapable of acting. The father had the right of administration upon his estate, which right he subsequently exercised; and, in anticipation of such administration, he had authority to do what was necessary to preserve his estate and his right of property. In *White* v. *Stoddard*, 11 Gray, 258, the holder of a promissory note having died before its maturity, leaving a will and naming an executor who presented the will for probate but declined the trust, and an administrator having been appointed with the will annexed, who, within a week after his appointment, found the note among the papers of the deceased and demanded payment the next day, and duly notified the indorsers, it was held that such notice was sufficient to charge the indorsers; and, in a very elaborate opinion by Chief Justice Shaw, in *Rand* v. *Hubbard*, 4 Met. 252, he discussed the subject in his usually exhaustive manner, expressed surprise at the dearth of decisions upon the question, and the want of uniformity in text-writers, and decided that an executor of a will of a citizen of New York, which had been proved in that State but which had not been filed in a probate office in this Commonwealth, and no administration having been granted here, might, at the maturity of a note due his testator, send the note to a notary in Massachusetts and have demand and notice properly made, although he had not the right to collect the note in this Commonwealth. We think it is properly inferrible from these decisions that although it is not laches that demand and notice were not made at the maturity of the note, when there was no person legally authorized to collect the note, yet that a demand and notice at the maturity of the note by one who had the right of administration of the estate, and to whom administration was afterward committed, would be sufficient.

In this case, the notice was given by the person who became the administrator, and who at the time of the notice had the right of administration; so that the person who gave the notice was the person who in law was bound to give the notice, and

the only difference to the defendant in respect to it was that he gave the notice sooner than by law he was required to do; and we think it would be holding the law altogether too strictly to decide that he was not a person who might properly give the notice. The fact that he afterward became administrator, and adopted the notice which he had previously given, would perhaps be sufficient evidence of compliance with the statute; but we think it more satisfactory to place the decision upon all the facts in the case, the relation of the parties, the statute authority for another to act for the person interested, and the clear purpose manifested thus to act in behalf of his deceased son, and the full knowledge of the defendant that he was thus acting and thus claiming to act, with no objection upon their part to the propriety of such action.

It is further objected that the notice was insufficient in form. No form of notice is specified in the statute; but it must be of the time, place and cause of the injury. The time stated by the father to one of the selectmen was Christmas morning. This we think sufficiently precise as to time; and although we do not mean to intimate that the naming of a day is not sufficiently precise, certainly there can be no objection to the time when a well-known division of a day is named. The place of which notice was given was Sheridan Street, and the particular defect was a part of a post in Sheridan Street. If that were all, the question whether Sheridan Street would be sufficient as a designation of the place would arise; but that was not all. The post was referred to between the father and the selectman, and the father was told by the selectman that he had been to the spot, and had seen the post, so that the exact locality was not only brought to the mind, but was the subject of discussion between the parties, and the claim was made by the selectman that the post was not a defect, but that it was rightfully there.

It is further objected that the word "cause" in the statute is not answered by stating the defect; that a defect may exist and still not be the cause of the injury; that other facts might concur to cause the injury besides the mere existence of the defect. This distinction cannot be maintained. The purpose of the statute is to secure notice of the defect which caused the injury. If it turns out that such defect was not the cause, or that other

causes conspired with the defect, for which others than the town were responsible, the town would not be liable. It is only when the defect is the sole culpable cause of the injury, that the town is liable. *Palmer* v. *Andover*, 2 Cush. 600. *Rowell* v. *Lowell*, 7 Gray, 100. *Alger* v. *Lowell*, 3 Allen, 402. And it would be a failure in the sufficiency of the notice if it did not specify the defect as the cause of the injury. The notice given in this case was therefore sufficiently definite as to time, place and cause.

It is, however, further objected that in the interview between the father and the selectman it was not distinctly stated that the town would be held responsible for the injury. The statute does not require this ; but, if this were necessary, the conversation between the father and the selectman, in which he said that he " claimed the town was liable, and that he should claim it till he found out to the contrary," does show that the father deemed the town responsible, and leads fairly to the inference that he intended to hold it responsible.

And to the objection that it did not appear that the notice indicated for whom it was given, or to whom the town was to be deemed liable, it is sufficient to say that the whole question of notice was left to the jury under instructions not objected to, so that the only question is whether there was any evidence proper to be submitted to the jury. The witness testified that he went in behalf of his daughters Susan and Lily and himself, and that he told the selectman that " it was hard to have a son killed and daughters almost killed by such a post." The statute not then requiring any written notice, and requiring only that the notice should be in behalf of the claimant, the judge properly left to the jury the question how far such interview was in behalf of the parties injured, and to what points it was effectual notice ; and it was not error to submit to the jury the entire question whether the notice required by the statute had been given.

It is contended that the instructions in relation to Sheridan Street were erroneous. In some respects, the instructions upon this point were too favorable to the defendant. It was contended by the defendant, and so the judge ruled, that Sheridan Street had never been legally located, and that it could not be a way by dedication unless it had been used by the public for

more than twenty years before 1846, when ways might be estab
lished by dedication and acceptance. But lapse of time, prior
to the statute of 1846, was not a necessary element in establish
ing a highway by dedication. The controlling fact was accept-
ance by the town of the dedication, and the time was immaterial.
It is, however, said that the instruction in regard to the duty of
the town to close up the way, or to warn persons not to pass
upon it, or give notice that it was not a public way, was errone-
ous. This instruction was, "that Sheridan Street had not been
laid out in accordance with law, and that, to prove it to be a
dedicated way, the jury must be satisfied that it had been used
by the public for twenty years before 1846; but that, if the pub-
lic was not cautioned against travelling upon it, the town would
be liable for an accident to persons coming out of such way, as
well as those entering thereon."

If there were no other ruling upon the subject, and no other
facts existed, in relation to the way, than that it was an open
way used by the public, but not legally established, the instruc-
tion might be open to criticism. It is, however, to be noticed,
that Sheridan Street is a street which upon the evidence had
been long open to and used by the public. For injury sustained
by a defect in such a street, there are various modes by which
the liability of the town may be fixed. It may be liable because
the way is an ancient, prescriptive way, of whose origin there is
no record; it may be because the way has been legally located
and established; and prior to 1846 such liability would be fixed
by a dedication of an open way to the public, and the accept-
ance of it by the town.

There is still another mode by which the liability of the
town is fixed by estoppel; that is, if the town has made re-
pairs upon the way within six years before the injury, it is
not permitted to deny that it is a way which it is bound
to keep in repair. Gen. Sts. c. 44, § 26. It appeared that
Sheridan Street had been laid out by the road commissioners
of the defendant town as a town way, and that the report of
the laying out had been filed by the road commissioners in the
town clerk's office; that this report had been accepted by the
town at a town meeting, and the way had been actually built
by the town; but it appearing that the notice of the town

meeting at which the way was accepted was not in accordance with a by-law of the town, the presiding judge ruled that, for that reason, the action of the town upon the subject was invalid and that Sheridan Street had not been legally laid out and opened to public travel by the town. The question then arose, whether the liability of the town could be fixed in any one of the various modes which the statute authorizes. It had obviously been dedicated to public use, and apparently there had been acceptance of it. Whether it had been used, and how and under what circumstances, before 1846, does not appear; and the inadvertent use by the presiding judge of the phrase " twenty years " probably had no effect whatever. It is in reference to ways thus dedicated to public use, but not legally established, that the statute requires barriers or notices. It was upon the subject of ways by dedication that the presiding judge was instructing the jury when he used the language which is now objected to ; and obviously justice requires of us that his language shall be interpreted by the subject matter with which his mind and the jurors' minds and the minds of the parties were occupied, and, in reference to that subject matter, the instructions were exactly appropriate and accurate. If the language used might be extended to other than such ways, it would be the duty of the counsel to call the attention of the presiding judge to it and ask that it be thus limited. It would be as unjust for him to take advantage of such use of language as it would have been for the plaintiffs, if the verdicts had been against them, to take advantage of the inadvertent use by the judge of language which implied that the town must have used the way for twenty years before 1846 before it could be established by dedication. Language used by a presiding judge which as used was perfectly clear, intelligible and accurate, and was so understood when used, may afterwards, when it is carefully scrutinized, be found to apply to a subject which at the time of its use was not in the mind of the speaker. Inasmuch as the instruction excepted to was appropriate and accurate in reference to the subject then under discussion, an exception to it will not be sustained, even if it be found that the words were broad enough to be erroneous, unless the attention of the presiding judge is called to the fact, and he declines to limit the language. We do not, however,

mean to imply that by any proper construction the language of the presiding judge in this case could be thus extended.

It is also objected that there was no evidence which would warrant the presiding judge in submitting to the jury the question whether the town had made repairs upon the road within six years. There was certainly evidence upon that subject, and very strong evidence, perhaps absolutely decisive, if believed, that the town had thus made repairs. The evidence was to the point that something had been done to facilitate travel upon the street, within six years prior to the accident; that it had been done by a servant of the town, who had been paid by the town for doing it, and that he performed the labor with the town's horses and implements. It was not error to submit the question to the jury whether the town had made repairs within six years; and the instructions under which such question was submitted were not excepted to.

The remaining objections of the defendant go to the whole right of action, and the claim is that there was no defect, and that the driver of the vehicle in which the injured parties were was not in the exercise of proper care at the time the injuries were sustained. These are purely questions of fact. There was a conflict of evidence as to the situation of the post in relation to travel, and it was not competent for any tribunal except the jury to determine whether the post was or was not a defect.

The question whether there was sufficient evidence of the exercise of due care on the part of the person in charge of the horse was strenuously argued by the defendant's counsel. We do not think that question is open upon the bill of exceptions. No special instruction upon that point was asked and no special exception was taken.

At the close of the plaintiffs' case, the counsel for the defendant asked the court to rule that there was not sufficient evidence in behalf of the plaintiffs to submit the matter to the jury; but it has often been held that the defendant has no right to ask such instruction unless he elects to rest; this the defendant did not do, and at the close of the whole case the request was not renewed except as to other distinct grounds. There was therefore nothing open to the defendant but the specific rulings of

the presiding judge, and upon this point no specific ruling was asked or given. We are not therefore called upon to decide that question, and upon it we give no opinion, because it is not open. *Exceptions overruled.*

*T. H. Sweetser & J. W. Johnson,* for the defendant.

*W. B. Gale & W. N. Mason,* (*J. P. Gale* with them,) for the plaintiffs