Carpenter, Administrator, Respondent, vs. The Town of Rolling, Appellant.

*September 25 — October 12, 1900.*

*Highways: Pleadings: Negative pregnant: Death: Traveled track: Court and jury: Proximate cause: Verdict: Notice, by whom signed, when sufficient: Widow: Pecuniary loss: Evidence: Instructions to jury: Intoxication: Contributory negligence.*

1. In an action against a town to recover for the death of plaintiff's intestate, the complaint alleged that the road where the accident occurred was a public highway. The answer, while admitting the existence of a wagon road at the place in question, alleged want of sufficient knowledge or information to form a belief as to whether the road was a legally laid out highway, or whether the defendant was in duty bound to keep it in repair, and therefore denied the same. *Held,* insufficient to raise an issue as to whether the *locus in quo* was a public highway. Towns should be held to know what roads within their limits are public highways.

2. Whether a large log lying at right angles with the traveled track, one end being within a few inches of such track, constitutes a defect in the highway is a question for the jury, even though there was at that point a smooth road about ten feet in width.

3. In an action to recover for the death of plaintiff's intestate, alleged to have been caused by a defective highway, it appeared, among other things, that deceased, a strong, healthy man, thirty-eight years of age, was found dead on the highway with his face smashed in, evidently the result of a fall from his wagon; that there was considerable blood upon the highway and upon his face; that deceased had been traveling in his wagon south over the road in question; that about forty-eight feet north of where the body was found there was a large log lying nearly at right angles to the track, one end being within a few inches of the east track; that about eight inches from the end of the log there was a fresh mark, apparently of a wagon wheel, with a wagon track leading to it from the north; and that the team and wagon of deceased were found about forty-five rods south, standing by the side of the road. *Held,* that the questions whether deceased was thrown from his wagon by reason of its striking the log, and whether his death resulted from the injuries received in his fall, were for the jury.

4. Under sec. 1339, Stats. 1898 (requiring a notice in writing, signed by the party, his agent or attorney, to be given to a supervisor of the

Carpenter vs. The Town of Rolling.

town), notice of a claim against a town for damages for the death of a person occasioned by a defective highway need not be signed by the administrator of the deceased, but may be given by the beneficiary to whom the damages will accrue in case of recovery. *Parish v. Eden*, 62 Wis. 272, followed. [Whether such notice is necessary in case of an action for death under secs. 4255, 4256, not determined.]

5. The notice required by said sec. 1339, Stats. 1898, may be given by the delivery of a duplicate original.

6. On an issue as to the pecuniary loss of a widow, caused by the death of her husband, it appeared, among other things, that deceased was a strong, healthy man, thirty-eight years of age; that he owned 160 acres of land, fifteen acres of which were cleared, and that therefrom he supported his wife and three children; that with her help he raised during the year before his death about 300 bushels of grain, 100 bushels of potatoes, half an acre of corn, and some hay; that she did all the work after his death, but did not raise quite as much as when he was alive. *Held*, sufficient to authorize the submission of the question to the jury, in view of the difficulty of proving exact values in such cases.

7. In view of the fact that the liability for accidents upon highways is purely statutory, and that the statute creating it (sec. 1339, Stats. 1898) provides for recovery in case of damage caused by "the insufficiency or want of repairs" of any bridge or road, it is better, in submitting to the jury the question of liability, to use the statutory terms, rather than to attempt to use other expressions that may be substantially equivalent.

8. In an action to recover for the death of a man who had been thrown from his wagon and killed while driving home from town on a load of feed, the evidence — stated in the opinion — is *held* insufficient to sustain findings of the jury that he was not intoxicated, and that he was capable of exercising ordinary care.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This is an action for damages on account of the death of Jacob Hetzel, the plaintiff's intestate, which death is alleged to have resulted by reason of a defect in the highway in the defendant town. The evidence showed that Jacob Hetzel at the time of his death was a farmer thirty-eight years of age, living in the town of Aniwa, Shawano county,

about two and one-half miles from the village of Aniwa, and
several miles south of the city of Antigo, in Langlade county.
He was a married man, having a wife and three children.
On the 18th day of November, 1897, Hetzel left home in the
morning with his farm wagon and a team of horses to take
a load of rye to the mill at Antigo for the purpose of having
it ground into feed. He reached Antigo with his load, and
had the feed ground, and started back with the feed upon
his wagon in bags at about four o'clock p. m. on the same
day. While in town he visited several saloons, and on his
way home had some difficulties in keeping his team in the
road, and was thrown or fell from his wagon while driving
upon a piece of traveled road in the defendant town, which
is claimed by the plaintiff to have been a highway, at some
time between six and seven o'clock in the evening. He was
found lying upon the road, dead, with his face badly bruised,
at about eight o'clock p. m., and his team and wagon were
found some forty-five rods south from the body, standing by
the fence. The evidence showed that the body of the deceased
was lying about forty-eight feet south of a large log, the
end of which came up close to the east track of the road on
which he was traveling, and it is claimed by the plaintiff
that the wagon of the deceased struck the end of the log
and threw him out. There was considerable evidence upon
both sides as to whether or not the deceased was intoxicated,
but, as that subject will be treated at length in the opinion,
it is unnecessary to state it here. A special verdict was re-
turned, as follows: "(1) Was Jacob Hetzel killed by falling
from his wagon at or near the time and place described in
the complaint? Yes. (2) Was the death of Jacob Hetzel
caused by the defective and unsafe condition of the high-
way at the time and place in question? Yes. (3) Was the
defective and unsafe condition of said highway at the time
and place in question the proximate cause of Jacob Hetzel's
death? Yes. (4) Had such defective and unsafe condition

of the highway existed for such a length of time prior to the accident that, in the exercise of ordinary care and prudence, the defendant would have known of it and repaired the same? Yes. (5) Was Jacob Hetzel at the time of the accident guilty of any want of ordinary care and prudence which contributed to the accident which caused his death? No. (6) Was Jacob Hetzel so intoxicated at the time of the accident as to be incapable of exercising ordinary care in the management of his team to avoid injury? No. (7) If you answer the last question, Yes, then answer this question: Did such intoxication contribute to the injury he received? (8) At what sum do you assess the plaintiff's damages? $1,500."

Judgment for the plaintiff was rendered upon this verdict, and the defendant appealed.

*T. W. Hogan*, for the appellant.

For the respondent there was a brief by *Bump, Kreutzer & Rosenberry*, and oral argument by *E. L. Bump*.

WINSLOW, J. A number of assignments of error were made by appellant which are not considered well taken, and these will be first considered.

1. It is said that the *locus in quo* was not shown to be a highway. The road in question was shown to have been first opened by private parties, but it was also shown that it had been in existence and generally used by the public for twelve or thirteen years, and, further, that several taxpayers had been permitted by the overseer of highways to work out their road taxes at various times upon it. We do not think, however, that the question was an open one, under the pleadings. The complaint alleges that the road where the accident occurred was a public highway in the defendant town. The answer admits that there is and was a wagon road in said town at the place claimed, which is used by the public for travel by teams and by travelers on

foot, but as to whether it is a legally laid out road or highway, or whether said town is in duty bound to keep the same in repair, defendant has not sufficient knowledge or information to form a belief, and therefore denies the same. This is a style of pleading not to be commended. The town should, in reason, be held to know what roads are public highways within its limits. The allegation that the road in question was a public highway is not met either by positive denial or denial upon information and belief, as the statute requires. Stats. 1898, sec. 2655. Taken altogether, the allegations amount to an admission that the road was generally used by the public, but that the town officers had no knowledge or information as to whether it was legally laid out, or as to whether the town was bound to keep it in repair. The question whether it was legally laid out was not the essential question, but rather whether it was a highway in fact. It might have become a highway by dedication and use by the public, though never formally laid out, and the allegation in the complaint that it was in fact a public highway is nowhere denied, but rather admitted by the negative pregnant statement of want of knowledge as to whether it was ever legally laid out. *Althouse v. Jamestown*, 91 Wis. 46.

2. It is argued that no defect in the highway was shown, because there was shown to be a smooth road a little over ten feet in width at the point of the accident. This position is untenable, because it is well settled that, notwithstanding a road may contain a smooth traveled track of sufficient width, still, if there is an obstruction or declivity so close to the traveled track as to render the road unsafe for those traveling thereon in the exercise of ordinary care, the highway may be insufficient. *Slivitski v. Wien*, 93 Wis. 462, and cases cited. The question whether the log in this case was such an obstruction was properly for the jury.

3. It is claimed that there was no sufficient evidence to

justify a finding that the deceased was thrown from the wagon by reason of its striking the log, and that, even if that be admitted, still that it is mere conjecture whether his death resulted from the injuries received in his fall. We think there was sufficient evidence justifying the submission of both questions to the jury. The log was a large hemlock log, lying nearly at right angles with the traveled track, and with its end sharpened off, and within a few inches of the east wagon track. It had become somewhat soft and "dozy" on the outside, and a number of the witnesses who were at the place immediately after the accident found a fresh mark or notch on the north side of the log, and about eight inches from the end, which seemed to have been just made by the wheel of a wagon striking it, and one witness testified that there was a wagon track leading from the north to the point where the log was apparently struck. While these facts are not conclusive, we think they are sufficient to entitle the plaintiff to have the question submitted to the jury. As to the second contention, namely, that the cause of death is conjectural merely, the evidence showed that the plaintiff was a strong, healthy, hard-working man, of the age of thirty-eight years, not afflicted with any disease; that he was found on the highway; dead, with his face smashed in, as the result evidently of a severe fall from his wagon; and with considerable blood upon the highway and upon his face. Certainly the jury were warranted in finding that his death, under such circumstances, was the result of the fall. Any other finding would be pure conjecture.

4. It is claimed that no proper notice was given to the town, under the provisions of sec. 1339, Stats. 1898, because a copy only was given to one of the supervisors, whereas the statute requires the original notice to be served, and because the notice was signed, "Matilda Hetzel, by B. A. Cady, Her Attorney," and was not signed by the administrator who brings the action. Conceding that such a notice is necessary

in case of an action for death, under secs. 4255, 4256, Stats. 1898 (a point not decided), we think the objections are hypercritical. The statute (sec. 1339) requires a notice in writing, signed by the party, his agent or attorney, to be given to a supervisor of the town. The attorney testifies that he delivered a copy to the supervisor, and obtained his admission of service on the original, and that the notices were duplicates. If the notices were duplicates, then both were manifestly originals, thus satisfying the statute, even if the narrow construction claimed by the appellant be given to it. As to the claim that the notice must be signed by the administrator, and cannot be given by the beneficiary to whom the damages will accrue in case of recovery, the case of *Parish v. Eden*, 62 Wis. 272, distinctly holds that the notice in such case may be given by the beneficiary, and the case in that respect was in no way affected by the holding in the case of *McKeague v. Green Bay*, 106 Wis. 577.

5. It is objected that the evidence was not sufficient to show any pecuniary loss to the widow. We think this objection not well taken. The evidence of the widow showed, in substance, that the deceased was a strong, healthy man, thirty-eight years of age; that he owned and lived upon 160 acres of land, fifteen acres of which were cleared and cultivated; that he supported his wife and three children by his labor on the farm; that he left a team of horses, two cows, and two heifers; that he raised during the year before his death about 300 bushels of grain, 100 bushels of potatoes, half an acre of corn, and some hay; that she helped her husband some in making hay and during harvest time; that she had done all the work herself since her husband's death, and during the last year raised forty-five bushels of grain, some hay, potatoes and corn, but not quite as much as when her husband was alive. While it would have been more satisfactory if the money value of the earnings of the deceased which he contributed to the support of his wife had been

Carpenter vs. The Town of Rolling.

more definitely fixed, it must be remembered that the difficulties in the way of proving exact amounts or values in the case of a small farmer, much of whose produce is never reduced to money at all, but is consumed in specie, are very great. On the whole, we think the evidence was fairly sufficient to authorize submission of the question to the jury.

6. It is insisted that the verdict is improper in form, and does not cover all the issues in the case, and that the following questions submitted by the defendant should have been incorporated in the verdict: "(1) Was Jacob Hetzel, at the time he was killed, intoxicated from drinking spirituous, malt, or intoxicating liquors? (2) Was the road a public highway, which the defendant was bound to keep in repair? (3) Was the road in such a condition that a person using ordinary care and prudence could safely drive over the same without striking log described in complaint?" As to the second of these questions, it has already been held in this opinion that the answer must be construed as admitting the existence of the highway, and as to the other questions we think they were, in effect, covered by the questions actually submitted. A criticism is made of the form of the questions with regard to the condition of the highway which has a certain degree of force. The statute creating liability for accidents upon highways (sec. 1339, Stats. 1898) provides for a recovery in case of damage caused by "the insufficiency or want of repairs" of any bridge or road. Both in the special verdict and the charge of the court in this case the question submitted to the jury is whether the highway was "defective and unsafe." While we are not prepared to say that this expression is not substantially equivalent to the expression "insufficient" or "out of repair," we should think it better if the statutory terms were used, especially in view of the fact that the liability is purely statutory.

Passing, without specific mention, a number of minor as-

signments of error which are not considered as well taken, we come to the question whether the findings of the jury to the effect that the deceased was not guilty of contributory negligence, and was not intoxicated so as to incapacitate him from exercising ordinary care, are sustained by the evidence. The principal litigated question of fact in the case was whether the deceased was intoxicated at the time of the accident. Upon this issue the plaintiff produced several witnesses who saw the deceased while he was in Antigo, between three and four o'clock in the afternoon, who testified that he was, in their judgment, not intoxicated; and one witness, who claims to have met him on his way home and talked with him, testified to the same effect. Opposed to this testimony, there is uncontradicted testimony that he drank whisky and beer in several saloons in Antigo during the afternoon; and that after leaving Antigo with his load, at somewhere near four o'clock in the afternoon, he stopped at a roadside saloon, just outside of the city. The uncontradicted evidence as to his actions on his way home, from the time he left the city until his death, is simply overwhelming in its tendency to prove maudlin intoxication. The witnesses are all apparently disinterested and reputable citizens, some of them neighbors and friends of the deceased, and their testimony is entirely consistent and apparently truthful. Without detailing the testimony given by each witness, it is sufficient to say that their testimony shows the following facts: Hetzel left Antigo with his wagon full of feed, in bags, at some time after four o'clock. Before he got out of the city his load became disarranged, and one of the bags of feed began to spill its contents along the road. The witness Hopkins overtook him, stopped him, and helped him straighten up his load, and scraped a part of the lost feed in a bag. Hopkins then got into the wagon with him, and rode to his (Hopkins's) residence, a distance of about sixty rods. Hopkins testified

that the man was intoxicated.    While Hopkins and Hetzel were scraping up the feed, the witness Zahn, a farmer living four miles south of Antigo on the road which Hetzel traveled in going home, came by with his team and lumber wagon, and stopped.    He testifies that Hetzel was drunk, not able to hold himself straight; that he held onto the wagon with one hand, and picked up feed with the other. Zahn further testifies that he went along home, and Hetzel followed.    After he reached home, and had put up his team, he heard a man hollering in the road, and got a lantern, and went to see what was the matter.    He found Hetzel standing on the ground, holding onto his wagon, with his team two rods out of the road.    One line was in his hands, and the other dragging on the ground and under the end of the wagon tongue.    He wanted witness to help straighten him up and get him in the road, which the witness did.    He (witness) had to balance him into the wagon, and before Hetzel had gone four or five rods he was nearly out of the road again.    He was drunk.    Two ladies, who had been at Zahn's with a horse and buggy, were also witnesses of this transaction, and were about driving south, but allowed Hetzel to precede them on the road.    One of the ladies testifies that he drove on about a mile, to the place of one O'Connor, where they found him with the horses turned up to the fence, and he said, " Boys, stop a little; " but they drove on.    She further testifies that she, thought the man was vomiting.    The ladies drove back over the road soon after, and found one of Hetzel's bags of feed, which had dropped from the wagon on the road.    O'Connor testifies that he heard a call for help, and went out, and found a team standing in the road, and a man asked him if Shroeder lived here, and he told him, " No," and he (O'Connor) directed the man to Shroeder's house, and took the horses' heads, and helped him get back into the road, because he seemed to have difficulty about it.    About two

miles south of Zahn's place the witness Barnes lives, and he testifies that as Hetzel came by the team started to turn in and ran up on the embankment on the side of the road, but that Hetzel hallooed at them, and they turned back, and went across on the other side, and then back into the road, and then started off on a run. From this point to the place of the accident no one seems to have seen him, but a number of witnesses heard the noise of his team and wagon, as if driven furiously. A few rods before reaching the log he lost another bag of feed; then his cap and a mitten. After he was thrown out, the horses proceeded about forty-five rods, and stopped in the fence, the bridle of one of the horses being off. When Hetzel was picked up, the witnesses almost unanimously testify that he smelled strongly of liquor. Comment on these uncontradicted facts is unnecessary. They prove conclusively that the man was in a state of almost helpless intoxication, and incapable of exercising any care. Any other conclusion almost amounts to an insult to the intelligence, and a verdict that he was not intoxicated, or that he was capable of exercising ordinary care, should have been set aside at once.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

CASSODAY, C. J., took no part.