KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* FROST.

Opinion delivered December 6, 1909.

1. WITNESSES—IMPEACHMENT—FOUNDATION. — A witness whose deposition was taken on behalf of plaintiff cannot be impeached by showing that he offered whisky to another witness and tried to induce the latter to give testimony favorable to plaintiff, unless such deponent was first interrogated as to such matters and given an opportunity to admit and explain or deny them. (Page 189.)

2. INSTRUCTIONS—CONSTRUCTION.—A too general statement in one instruction may be cured by a more particular statement in another. (Page 189.)

3. DEATH BY WRONGFUL ACT—PARTIES.—Under Kirby's Digest, § 6290, providing that an action for damages on account of the death of one caused by the wrongful act, neglect or default of another shall, in the absence of a personal representative, be brought by the heirs at law of such deceased person, *held* that in such a case the mother was not an heir and not entitled to sue, although the deceased contributed to her support in his lifetime. (Page 189.)

4. SAME—DAMAGES FOR LOSS OF PARENT.—Infant heirs whose parent is killed by another's negligence are entitled to recover the probable aggregate amount of his contributions to them, reduced to present value, the question whether such contributions would probably cease after minority or continue thereafter being for the jury. (Page 190.)

5. SAME—DAMAGES—EXCESSIVENESS.—Where the evidence established that plaintiff's intestate had been earning from $80 to $125 per month, that he was 34 years old and had an expectancy of $31\frac{3}{4}$ years, was industrious, attentive to business, economical, strong and healthy, affectionate and kind to his family, a verdict awarding to plaintiffs, his minor heirs, the sum of $15,000 was not excessive. (Page 190.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed:

*Read & McDonough,* for appellant.

The happening of the accident does not show negligence. 79

Ark. 439; 82 Ark. 372. The children are not entitled to recover beyond their majority. Kirby's Dig., § 6290; 53 Ark. 117; 63 Ark. 563.

*Wilkins & Vinson, Webber & Webber,* and *Wolfe, Hare & Maxey,* for appellee.

The wife for herself and as next friend for the children was the proper party to prosecute this suit. Kirby's Dig., § § 2690, 2708, 2636; 71 Ark. 258; 157 U. S. 195. It is the province of the jury to determine the weight of the evidence. 101 S. W. 738. The law does not restrict a recovery to the minority of the children. Kirby's Dig., § 2690; 87 Ark. 443; 112 S. W. 967. Evidence to impeach a witness is not admissible where no foundation therefor has been laid. 5 Ala. 564; 8 Clarke 463; 32 La. Ann. 407; 98 N. C. 708; 3 S. E. 687; 4 Ore. 52; *Id.* 238; 4 Pac. 128; 14 S. W. 41; 21 S. W. 488; 12 S. W. 575.

Battle, J. On the 14th day of November, 1906, H. L. Frost was a switchman in the employment of the Kansas City Southern Railway Company at Mena, Arkansas. On the night of that day Frost and others were engaged in making up a freight train. While he was standing on the platform or steps of a car, it with other cars was moved against the end of a standing car, and in the collision he was fatally injured, insomuch that he died about six hours thereafter. He left surviving him Daisy Frost, his widow, and Earl Frost, Bernice E. Frost and Hardy L. Frost, his children, who are minors, and his only heirs at law. He died intestate, and no one administered upon his estate. His widow and children, by next friend, brought an action against the railroad company for the damages sustained by them through the death of the deceased. They relate in their complaint the manner in which the deceased was injured as follows:

"That on the 14th day of November, 1906, said H. L. Frost in the capacity of switchman, together with other employees of the defendant, were engaged in making up a fast merchandise freight train for the north; that said train was being made up on said track number 3, and as a part of the work of making up said train, after a great number of cars had been placed on said track number three, there was a caboose, coach and three other cars standing on said track number two, which were to be pulled out on the lead track and placed on said track number three, and

coupled to the cars that were standing on said last-named track; that the switch engine was taken in on said track number two and coupled to the said caboose, which was connected to said coach and said three other cars on track number two, and said caboose, coach and said three other cars were pulled off of track number two onto said "lead track" and then backed in on track number three to be coupled to the cars that were on track number three to finish making up said train.

"That, while said caboose, coach and three other cars were being moved backward on said track number three, which was being done at the proper, customary speed and in a careful manner, the said H. L. Frost was standing on the caboose platform and on the west side and the north end thereof, which was the proper and customary place for him to be in the discharge of his duties, the northernmost of said moving cars struck the south car of the string of cars that were standing on said track number three and all heavily loaded, and the coupling apparatus at the south end of said coach gave way, causing the platform of said coach to telescope the north platform of said caboose, and the said H. L. Frost was then and there caught between the north end of said caboose and said south platform of said coach, and was mashed and crushed and so injured that he died by reason of said injuries.

"That the death of H. L. Frost was directly and proximately caused by the negligence of defendant in this, that the coupling apparatus of said coach at the south end of same was old and worn and out of repair in whole and in every part and parcel of it, and was improperly and negligently constructed and so constructed that the said coupling apparatus and every part and parcel of it was without sufficient strength and power of resistance to withstand the blows, knocks and bumps ordinarily and usually incident to the switching and making up of freight trains, such as being done at the time said H. L. Frost was fatally injured, and it was negligence to allow or permit said coach to be put into and made a part of said train, as was being done. And said coach was not properly a part of said train, was not necessary to the uses to which said train was intended to be applied, and was indeed a menace to the defendant's employees, as defendant well knew, and the platform, drawheads, coupling ap-

paratus and bumpers on said coach were constructed and placed higher than were the platform, drawheads, coupling apparatus and bumpers on said caboose, and were negligently allowed to be and remain in that condition by defendants, making the same dangerous; that the platform and coupling apparatus on the north end of said caboose was out of repair, was sagged down and lower than the coupling apparatus and platform on the south end of said coach, and was negligently allowed to be and remain in that condition, so that a coupling between said coach and caboose could not be made so as to withstand the jars, knocks and bumps received in the switching and handling of the same, in that said coupling would not hold, and would permit the drawheads on said coach and said caboose to slip by each other and the platform of said coach to telescope the platform of said caboose, thereby rendering the same dangerous to the life of defendant's employees, and especially the plaintiff's decedent; that the defendant knew or should have known the facts in this paragraph alleged in time to have remedied the same, but the same were unknown to the said H. L. Frost, and he was himself free from any negligence or want of care."

The defendant denied these allegations.

From the evidence adduced in the trial in the action we find that the jury in the case could have reasonably found the facts as follows: On the 14th day of November, 1906, about 8:45 o'clock in the evening, in defendant's yards at Mena, Arkansas, Frost and others were engaged in making up a train No. 52, which was interstate and carried freight into the States of Oklahoma, Missouri and Kansas. The first part of it had already been made up, and the night crew were completing it. In the train was a caboose, No. 554, and a coach, No. 126. Frost was the switchman who followed the engine and passed signals to the engineer. In operating the engine the engineer received signals from Frost and another switchman named Clements. The engineer was moving several cars, one of which was coach No. 126, which was then coupled to the caboose and was a part of so much of the train as was already made up by the day crew. He received a signal from Frost and Clements to slow up, and then another to go ahead. At this time Frost was standing on a step or the platform of the caboose, where he could pass signals

to the engineer. It was not his duty to stand or be in any particular place, further than to be where he could receive and pass signals. The engine, at the time the signal to go ahead was given, was moving about two miles an hour; had just enough steam to keep it moving. When the signal to go ahead was given, the engineer barely touched the throttle of the engine. The cars moved by the engine struck other cars which were standing. The platform of the caboose went under the coach, knocking off the steps of the coach and breaking the hand railings on the caboose. One witness testified that two follow plates, the carrier irons and the timbers in the platform of the coach were broken; and that the follow plates were made of wrought iron, and were "26 x 12 inches and two inches thick." No other platforms, drawheads or apparatus was broken in that train at that time. Frost was seriously injured by the collision, and died in about six hours afterwards.

The drawhead on the caboose was five or six inches lower than the drawhead on the coach, and an effort was made once or twice to couple them, and they would not stay coupled. One witness noticed the condition of the drawhead on the caboose about one week before the accident. The effect of this condition was to let the caboose drawhead go under that of the coach.

The deceased at the time of the accident was thirty-four years old; his widow was thirty-seven; his son, Earl, was twelve years; Bernice was six years old in March, 1909; and Hardy at the time of the trial, on the 7th of December, 1908, was about four years old. Deceased was industrious, attentive to business and economical, affectionate and always kind to his children. He was qualified to discharge the duties of switchman and conductor on railroads. His widow testified that he earned as switchman from $80 to $90 per month. The pay checks introduced in evidence showed that he averaged $67.43 per month from January 1st to the date of his death. He was conductor at one time, and earned from $100 to $125 a month. He used his earnings in supporting his family.

In the progress of the trial O. H. Lowry's deposition was read as evidence in behalf of the plaintiff. His testimony was important and material. Defendant offered to prove by Gano Scott that Lowry offered to him whisky, and tried to induce him

to make a statement in the case to the effect that the cars were defective. Upon objection of the plaintiff the court refused to admit the testimony.

The court gave the following instruction over the objection of the defendant:

"I.   You are instructed that it was the duty of the defendant to exercise ordinary care and prudence to provide the said H. L. Frost with cars and appliances reasonably safe for use in and about the work that said H. L. Frost was engaged in at the time he was injured; and if you believe from the preponderance of the evidence that said H. L. Frost came to his death by reason of the failure of said defendant to exercise such care and prudence in furnishing such cars and appliances, reasonably safe for use in the work that he was then engaged in, and that he was killed as a direct and proximate result thereof, and that said deceased at that time was engaged in the performance of his duties as an employee of said defendant, and that said deceased was not guilty of such negligence as contributed to his injury, then it will be your duty to return a verdict in favor of the plaintiff."

And refused to instruct the jury, at the request of the defendant, as follows:

"II.   If the jury find from the evidence that Mrs. M. R. Frost was the mother of the deceased, H. L. Frost, and that said mother was in part supported by said H. L. Frost, they will find for the defendant."

"XXVII.   If the jury find for the plaintiffs, they will find for the children such damages as they are entitled to as compensation from the time of the death of H. L. Frost to the majority of each child. The girl will arrive at her majority when she is 18 years of age, and the boys when they are 21 years of age."

"XXVIII.   If the jury find for the plaintiffs, in assessing the damages they will consider the amount of damages due each plaintiff, allowing each of the children such compensatory damages as will fairly compensate him for the loss of his father to the date of his majority; and to the plaintiff, Daisy Frost, such compensatory damages as will fairly compensate her during the expectancy of her life, if she was older than her husband, or during the expectancy of his life, if he was the older."

The plaintiffs recovered a verdict and judgment for $15,000, and from that judgment defendant appealed.

No foundation was laid for the admission of the testimony of witness Scott. Witness Lowry was not interrogated as to the matters about which the defendant offered the testimony of Scott, the object of which was to discredit the testimony of Lowry, the same object, in effect, as is sought to be accomplished by showing .that a witness has made contradictory statements. The same methods should be observed, if practicable, in the former as in the latter case. There is no good reason why a witness should be entitled to greater consideration in one case than in the other. Lowry should have been first interrogated about that which the defendant proposed to prove by Scott. It could have done so; and it was right and just that Lowry should have had the opportunity to admit and explain or deny before his credibility or testimony was attacked. *Weaver,*v. *Traylor,* 5 Ala. 564; *State* v. *Stewart* (Or.) 4 Pac. 128; *Edwards* v. *Sullivan,* 30 N. C. 302; *State* v. *Angelo,* 32 La. Ann. 407; *Hollingsworth* v. *State,* 53 Ark. 387.

The defendant objected to the instruction given by the court over its objection and copied in this opinion, because it "is general, indefinite and permits a recovery, no matter what the defect in the cars may have been." The objection may be abstractly true, but the instruction should be read in the light of the evidence, which was confined to the issues made by the pleadings. Then, too, this instruction was limited by another instruction given at the instance of the defendant, in which the jury, in effect, were told that the only negligence they could consider was that alleged in the complaint.

The defendant's request numbered II and copied in this opinion should not have been granted. There was no administration upon the estate of H. L. Frost, deceased, and this action was properly brought by his widow and children. The right of action was created by a statute which, in the absence of a personal representative, provides that an action for damages on account of the death of one caused by the wrongful act, neglect or default of another shall be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin

of such deceased person, and they are such as can take as distributees of the estate under the laws of descent and distribution. *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443. The deceased in this case having left children, his mother was not an heir, and had no right to sue, notwithstanding the son contributed to her support in his lifetime. Kirby's Digest, § 6290.

The defendant sought by instructions to confine the right of the children to recover in this case to the damages they will suffer during their minority. The right to recover is limited only by the statute to the damages suffered, and not to any period of life. The right of the children to recover beyond minority depends upon evidence. Their damages are the pecuniary loss suffered by them, which is "the probable aggregate amount of his contributions to them, reduced to present value." *Kansas City Southern Ry. Co.* v. *Henrie,* 87 Ark. 454. It is probable the contributions of a father to the support of a child after he reaches his majority may cease altogether, or be less. That of course will depend upon the ability of the child to take care of himself and his success in life. Parental affection for the child will not, probably, cease after minority, and the father may still continue to contribute to the support of the child. That is a question for the jury to decide according to the evidence of the assurance the parental affection may give of aid and support to the child after minority. *Railway Co.* v. *Davis,* 55 Ark. 462.

Defendant contends that the damages recovered were excessive. Mrs. Frost testified that deceased earned as a switchman from $80 to $90 a month, and that he served as conductor at one time and earned from $100 to $125 per month. He was thirty-four years old, and his expectancy was thirty-one and three-fourths years. He was industrious, attentive to business, economical, strong and healthy, affectionate and always kind to his family. He used his earnings in support of his family. Plaintiffs recovered $15,000. The evidence was sufficient to sustain the verdict of the jury. *Kansas City So. Ry. Co.* v. *Henrie, supra.*

The evidence was sufficient to sustain the verdict. The jury could have found from the evidence that the signal to go ahead did not accelerate the speed of the engine, and that no act of plaintiff contributed to his injury; and that the defendant was

guilty of the negligence charged in the complaint, and that it (negligence) was the proximate cause of his injury.

Judgment affirmed.