[No. 22945.   Department Two.   June 30, 1931.]

LORRAINE P. LUND et al., Respondents, v. CITY OF SEATTLE et al., Appellants.[1]

[1]Reported in 1 P. (2d) 301.

*A. C. Van Soelen, Glen E. Wilson,* and *Bundy & Swale,* for appellants.

*Geo. B. Cole* and *John Wesley Dolby,* for respondents.

MILLARD, J.—As a result of the collision in the city of Seattle, June 30, 1927, of one of the defendant city's street cars, while operated by defendant Peterson, with a fire department truck, Darwin T. Lund, a member of the fire department, was killed. The trial to a jury of an action against Peterson and the city of Seattle, brought on behalf of decedent's daughter to recover for the death of her father, resulted in a verdict for four thousand dollars in favor of the plaintiff. From the judgment entered, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendants appealed.

In 1918, Lund and his wife, now Maida A. Boyes, were divorced. Their only child, Lorraine P. Lund, then three years old, was awarded to the mother. Pur-

suant to the decree of divorce, the father paid until the time of his death fifteen dollars monthly for the maintenance of the child. In addition thereto, the father's contributions of clothing and money for the child amounted to fifteen dollars monthly. That is, the child received from her father, from the date of the divorce until his death, $360 per annum in money and clothing. The daughter was twelve years old at the time of her father's death. It appears from the testimony of the daughter, who visited her father frequently, that the daughter and father had real affection each for the other.

On July 11, 1927, Maida A. Boyes was regularly appointed guardian of the person and estate of Lorraine P. Lund. On July 25, 1927, which was timely, the guardian filed with the city of Seattle a claim in behalf of her ward for damages on account of the death of the ward's father. In verifying the claim Mrs. Boyes stated that

". . . she executes, presents and verifies this claim for damages as the mother, and as the duly appointed, qualified and acting guardian of the said Lorraine P. Lund, for the reason that said Lorraine P. Lund is a minor of the age of about twelve years."

The claim was subscribed by "Lorraine P. Lund; Lorraine P. Lund by Maida A. Boyes, mother of Lorraine P. Lund, a minor; and Maida A. Boyes, guardian of the person and estate of Lorraine P. Lund, a minor." No other claim was filed with the city on account of the death of Lund.

Florence Lund, widow of Darwin T. Lund, and the lady whom he married following his divorce from Maida A. Boyes, was appointed July 12, 1927, administratrix of Lund's estate. She, as the regularly appointed and qualified administratrix, was administering that estate at the time the claim was filed with the

city by the guardian in behalf of the decedent's daughter. On August 16, 1928, the estate was closed and the administratrix, to whom as surviving spouse the whole estate was set aside, was discharged. The inventory of the assets of the estate did not include the claim against the appellants for the death of Lund.

Lorraine P. Lund, by her guardian (Maida A. Boyes), commenced, prior to the discharge of the administratrix, an action against the appellants to recover for the death of her father. Demurrer to the complaint was sustained on the ground that the personal representative of the deceased, the administratrix of Lund's estate, was a necessary party plaintiff. On October 19, 1928, Maida A. Boyes was appointed administratrix *de bonis non* of the estate of Darwin T. Lund, deceased, on her petition therefor, and a showing that there was "estate remaining unadministered," and that the former administratrix, Florence Lund, refused to enforce a claim against the appellants. Thereafter, an amended complaint was filed in which Maida A. Boyes, as such administratrix, was added as a party plaintiff and the trial of the action resulted as above recited.

Appellants contend that the claim filed did not comply with the statute (Rem. Comp. Stat., §§ 9478 *et seq.*) and the city charter, which require that all claims for damages against the city must be presented and filed by or on behalf of the claimant, and that all claims must "be sworn to by the claimant." It is argued that "in a death case the personal representative is the claimant and no one else," therefore the claim filed by the mother and guardian is invalid, inasmuch as, at the time the purported claim was filed, there was a duly appointed, qualified, and acting personal representative in the person of the administratrix, Florence Lund.

While under our statute (Rem. Comp. Stat., § 183) only the personal representative of the decedent may maintain an action for damages against the one causing the death, it does not follow that, as a condition of the right to bring an action against a city for wrongful death, a claim be filed only by the personal representative of the decedent on behalf of the child of such decedent. As a condition precedent to the right to bring an action against the city therefor, one having a claim for damages sounding in tort against any city of the first class is required to file with the proper officer certain information (Rem. Comp. Stat., § 9478). Section 9479, Rem. Comp. Stat., provides that, if the claimant be a minor, the claim may be verified and presented on behalf of the claimant by any relative or attorney or agent representing the injured person. This was done in the case at bar. The claim was verified and presented on behalf of the minor by the mother, who was the guardian of the minor. So far as pertinent, § 9479, *supra,* reads as follows:

"Provided, that if the claimant shall be incapacitated from verifying and filing his claim for damages within the time prescribed by charter, or if the claimant be a minor, . . . then the claim may be verified and presented on behalf of said claimant by any relative or attorney or agent representing the injured person, . . . and no action for damages now pending or hereafter brought shall be defeated by the failure of the person to verify or file the claim in person if action be brought within three years after the taking effect of this act, where a claim has heretofore been verified and filed within the time and in compliance with the terms of this act if said claim has been rejected."

We have heretofore held that statutory and charter provisions, requiring the presentation of claims and notice of injuries to the governing authority of the

municipality sought to be charged with liability before an action can be maintained thereon, are to be liberally construed. We said in *Frasier v. Cowlitz County,* 67 Wash. 312, 121 Pac. 459:

"The purpose of these provisions, as applied to a claim arising from a tort, is to enable the municipality to investigate both the claim and the claimant while the occurrence is recent and the evidence available, to the end that it may protect itself against spurious and unjust claims. When the claim substantially complies with the legislative requirement and these ends are subserved, the claim has accomplished the purpose intended. In an action prosecuted by an administrator for the benefit of the widow and children to recover damages arising from the death of the intestate caused by the alleged negligence of the defendant, a notice of the injury signed by the attorney for the administrator was held sufficient. *Hupfer v. National Distilling Co.,* 119 Wis. 417, 96 N. W. 809. See, also, *Carpenter v. Town of Rolling,* 107 Wis. 559, 83 N. W. 953. Under a statute requiring a notice of the claim to be given 'by the person injured or by any other person in his behalf,' it was held that the father, the natural guardian of his minor children, might give the notice. *Taylor v. Woburn,* 130 Mass. 494. The same general principle is announced in *Perry v. Clarke County,* 120 Iowa 96, 94 N. W. 454. . . . The argument that the commissioners could not safely pay the portion of the claim belonging to the minors to any one except a guardian, and therefore that none but a guardian may present the claim on their behalf, is more plausible than substantial. As we have seen, the minor may present a claim in his own behalf, and the party against whom the claim was asserted would be confronted with the same condition suggested by the argument. In either case, the party against whom the claim was asserted could protect himself by requiring the appearance of a guardian before paying over the money. We think the statutory requirement is met when a joint or joint and several claim is presented by any one of the beneficiaries. It is probably true in this state, as counsel asserts, that the guardianship by nature

extends only to the custody of the person of the ward and not to his property. But this does not preclude the parent, in a case like this, from making a preliminary claim or demand in behalf of the minor. Rem. & Bal. Code, sec. 5932.''

We held in *Green v. Seattle,* 146 Wash. 27, 261 Pac. 643, that the wife of a person whose death was alleged to have been wrongfully caused by the city could bring an action, as administratrix, against the city under Rem. Comp. Stat., § 183, although she had filed the required claim in her individual capacity, and not as administratrix, where she was the sole beneficiary of the deceased. We said:

"This court has repeatedly held that the city charter and statutory requirements as to the filing of claims are to be liberally construed and not, as one case stated, so as to make them a 'stumbling block or a pitfall to prevent recovery by meritorious claimants.' "

To the same effect is *Ackeret v. Minneapolis,* 129 Minn. 190, 151 N. W. 976, L. R. A. 1915D 1111, Ann. Cas. 1916E 897. In that case, a notice was given by a parent of a claim for injuries sustained by his minor child, which contained the information required by the statute. The notice was held sufficient, although it failed to state specifically that the parent claimed damages on his own account and also as the statutory representative of his child, and failed to make an apportionment between the two of the amount claimed. In answer to the contention of the city that the notice was defective in that the accident gave rise to one claim for damages in favor of the father and one in favor of the child, that the notice stated only one claim and did not specify whether that was the claim of the father or of the child, and that the notice could not serve as a basis for both actions, the court said:

"The purpose of the notice is to give the municipal officers information which will enable them to ascertain and investigate the facts while the evidence is available, and to determine whether a liability exists, and, if so, the nature and extent of such liability. While the essential requirements of the statute must be complied with, it has been determined that a claimant is not barred from maintaining his action because his notice was informal, or not technically accurate, if the information required by the statute could, in substance, be ascertained therefrom. . . . The notice in question gave the officials full and accurate information as to the time, place and circumstances of the injury. It also informed them that the one injured was the infant son of the one giving the notice, and that damages were claimed in the sum of $10,000. If the facts stated in the notice were true, the law gave the father the right to bring two actions—one in his own behalf and one in behalf of his child. It is true that the notice did not state whether he made the claim in his own behalf, or in behalf of the child, or in behalf of both; and, if in behalf of both, that it did not apportion the damages between them. The natural inference would be that he was insisting upon all the rights given by the law. We think that all the essential facts were set forth, and that no prejudice resulted to defendant from the failure of the father to state specifically that he claimed damages both individually and as the statutory representative of his child or from his failure to apportion the damages between the two claims. The purpose of the notice was fully accomplished, and we hold that it was not so defective as to bar either right of action."

In *McDougall v. Birmingham,* 219 Ala. 686 , 123 South. 83, 63 A. L. R. 1076, under a statute requiring a notice of a claim against a city to be filed by the injured party, and to state the damages claimed, it was held that a notice of a claim against the city for injuries to a four-year-old boy, which was filed by his mother, without a statement in the notice that she was

filing it for her son, but asking for a large sum in damages, was sufficient to sustain an action by the infant son, by his mother as next friend.

The claim in the case at bar complied with the requirements of the statute that a claim by a minor against the city for damages may be verified and presented on behalf of the minor by any relative of the claimant. While only the personal representative of the decedent may maintain an action for damages against the one causing the death, the statute does not, nor does the city charter, make it a condition precedent to an action by the personal representative of the decedent against the city for wrongful death that only the personal representative may file the claim required as a condition of the right to maintain the action. The statute specifically and definitely provides that if the claimant be a minor any relative of such claimant may verify and present the claim on behalf of the minor. Substantial compliance with the statute is sufficient. However, if technical accuracy were required, the claim conforms in every respect to the statutory and charter requirements.

Appellant next contends that, after an estate has been adjudged finally settled, and the administrator or administratrix, as the case may be, discharged, letters of administration *de bonis non* can not issue upon the same estate while the final settlement remains unrevoked and in force. It follows, insist appellants, that the appointment of Maida A. Boyes as administratrix *de bonis non* was invalid and the action must fail, as an action for wrongful death can only be maintained by the personal representative of the decedent.

The contention is without merit. Under our statute the action for death by wrongful act may be brought only by the personal representative of the deceased person. A right of action for wrongful death is an

asset sufficient in itself to warrant the appointment of an administrator or an administratrix, as the case may be, although that is the only property of the decedent within the jurisdiction. Section 1550, Rem. Comp. Stat., provides that the final settlement of an estate shall not prevent a subsequent issuance of letters of administration if other property be discovered, or if it becomes necessary or proper for any cause that letters should be again issued. The section reads as follows:

"A final settlement of the estate shall not prevent a subsequent issuance of letters of administration, should other property of the estate be discovered, or if it should become necessary and proper from any cause that letters should again issue."

Although the right to maintain the action for wrongful death is by statute vested in the personal representative, that right is for the benefit of another. In the case at bar, the personal representative would be acting merely as a statutory trustee to recover damages for the benefit of the statutory beneficiary of the action. If, prior to the settlement of an estate, an administrator (in whom is vested, as the personal representative of the decedent, the exclusive right of suing upon causes relating to the estate or assets thereof) refuse or neglect to exercise the power of reducing to possession the effects of the estate, that prerogative, as stated in *Hillman v. Young,* 64 Ore. 73, 127 Pac. 793, 129 Pac. 124,

". . . may for the time being pass from him to the heir to be used for the benefit of the estate, to the end that the lawful course of descent and distribution may not be hindered or impeded."

So, too, if an administrator, who acts as a statutory trustee to recover damages for the benefit of the statutory beneficiaries of the action for wrongful death, refuse or neglect to act, such beneficiaries would surely

have a remedy, otherwise there is a serious defect in the law.

There was a final settlement of the estate and the administratrix was discharged. Upon the hearing of the petition of Maida A. Boyes for appointment as administratrix *de bonis non,* the showing was made that there was "estate remaining unadministered," and that the former administratrix, Florence Lund, refused to act; that

". . . the plaintiff in said suit against the said city of Seattle requested the said Florence Lund, administratrix of the estate of said Darwin T. Lund, to join as a party plaintiff in said suit against said city of Seattle, and the attorneys of said plaintiff requested the attorney for said administratrix for said estate to have said administratrix join as plaintiff in said suit, and plaintiff and her attorneys were led to believe for a long time that said administratrix would join as a party plaintiff in said suit; that thereafter said administratrix refused to join as such plaintiff and without the plaintiff's or her attorneys' knowledge procured her discharge and release as administratrix of the estate of said Darwin T. Lund, deceased, and her bond exonerated, and there is now no duly appointed, qualified or acting administratrix of said estate."

A situation was presented where it was necessary and proper, under the provisions of Rem. Comp. Stat., § 1550, that letters of administration be again issued. The refusal of Florence Lund to resume the role of administratrix and perform her duty as statutory trustee made it necessary to appoint another in her stead. There was no disturbance of the final settlement. There was an asset of which final disposition had not been made, an act to be performed which under the statute only an administrator or administratrix could perform.

"Statutes in most states provide that final settlement of an estate does not prevent the issuance of let-

ters testamentary or of administration if other property of the estate is discovered, or if it becomes necessary or proper for any cause that letters should again be issued. The result of these provisions is that jurisdiction of the court continues as to subsequently discovered property. It is not necessary to disturb the previous final settlement. . . . The court is not bound, however, to issue further letters of administration, and should not do so unless there is property not fully disposed of or some act to be done which only an administrator can do.'' Bancroft's Probate Practice, p. 1917, § 1172.

Appellants next complain of one of the instructions given to the jury. As only a portion of the instruction of which complaint is made is set forth in the brief, the assignment is not entitled to consideration.

''Where an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full.'' Rule of Court VIII, § 2, 159 Wash. xliii.

However, it clearly appears from a reading of all the instructions that the jury were clearly and correctly charged under the pleadings and the evidence.

Insisting that a minor's right to damages for the negligent killing of a parent is limited to the period of minority, appellants urge as error the giving of the following instruction, which, it is argued, is not supported by any evidence, and the size of the verdict (four thousand dollars) demonstrates how prejudicial the instruction was:

''The pecuniary interest of this daughter and plaintiff, Lorraine P. Lund, of her father, Darwin T. Lund, deceased, does not necessarily end with her arriving at the age of twenty-one years, the age of majority in this state; but you may allow for the loss of any benefit, if any, of a pecuniary value which this child would with reasonable certainty have received from her father, not only until she reached the age of twenty-one years, but even after she had reached that age.''

It is the rule in this jurisdiction that damages to be awarded a minor for the wrongful death of a parent are not confined to the period of minority.

"In every such action the jury may give such damages, as, under all the circumstances of the case, may to them seem just." Rem. Comp. Stat., § 183-1.

The right to recover beyond minority depends on the evidence, and it is a question for the jury to say whether or not such damages may be recovered. We so held in *Rochester v. Seattle etc. R. Co.*, 67 Wash. 545, 122 Pac. 23, 39 L. R. A. (N. S.) 1156, in which the question was presented whether the court erred in instructing the jury that they could allow such pecuniary loss as the evidence showed the son would sustain after his majority from the father's death. We said:

"The applicable part of the statute is as follows: . . . 'In every such action the jury may give such damages, as under all circumstances of the case may to them seem just.' . . . We think the instruction is a correct interpretation of the statute, and that the court erred in granting a new trial. Indeed, we do not think it is susceptible of any other reasonable interpretation."

See, also, to the same effect, *Kansas City Southern R. Co. v. Frost*, 93 Ark. 183, 124 S. W. 748; *Paris & G. N. R. Co. v. Robinson*, 127 S. W. (Tex. Civ. App.) 294; and *Peters v. Southern P. Co.*, 160 Cal. 48, 116 Pac. 400.

Lorraine was twelve years old when her father was killed. The father was legally obligated to pay to that daughter fifteen dollars monthly until she arrived at her majority. He punctually made those payments from the date of the divorce decree until his death nine years later. His contributions to the daughter during that period, in addition to the fifteen dollars he paid as required by the divorce decree, amounted to fifteen dollars monthly. Lorraine received from her father $360

per annum. If those payments continued until Lorraine arrived at the age of twenty-one years, they would aggregate $3,240, or $760 less than the verdict of four thousand dollars. That $760 would, within a very short period of time subsequent to the date of arriving at her majority, have been received by the daughter if her father had continued to live and had he continued to contribute fifteen dollars monthly as he had done for nine years when not legally obligated to do so. The jury had the right, in arriving at their verdict, to consider the disposition of the father to aid his daughter, the actual relations between them as manifested by acts of pecuniary assistance rendered by the decedent.

"It is probable the contributions of a father to the support of a child after he reaches his majority may cease altogether, or be less. That of course will depend upon the ability of the child to take care of himself and his success in life. Parental affection for the child will not probably cease after minority, and the father may still continue to contribute to the support of the child. This is a question for the jury to decide according to the evidence of the assurance the parental affection may give of aid and support to the child after minority." *Kansas City Southern R. Co. v. Frost*, 93 Ark. 183, 124 S. W. 748.

We can not hold that the amount of the verdict in this case was in excess of the amount of pecuniary assistance and support which the daughter might reasonably have expected to receive from her father had he lived. The measure of damages for death of a minor's father is, of course, indefinite and is not capable of exact ascertainment, and under our statute is left to the sound discretion of the jury. There was a showing on the part of the respondent that, had the father lived, he would probably have contributed fifteen dollars monthly to the support of his daughter. The disposition of the father towards his daughter, as manifested by

his gift to her for nine years of fifteen dollars monthly over and above the amount he was required by the divorce decree to pay, is an indication of the probability of continued contributions by the father to the daughter; such contributions, together with other facts recited above, tended to prove that the daughter had a reasonable expectation of receiving aid in the future from her father. The court correctly instructed the jury to allow the respondent minor such damages as they found she would suffer after majority, the facts in this case indicating the probability of such loss because of the character of the father.

The judgment is affirmed.

TOLMAN, C. J., BEELER, and MAIN, JJ., concur.